## HARRILL et al. v. PENN et al.

No. 17056. Opinion Filed Dec. 20, 1927.

Rehearing Denied Jan. 8, 1929.

Watts & Broaddus and John C. Graves, for plaintiffs in error.

Furry & Donovan, Malcolm E. Rosser, Joseph C. Stone, Charles A. Moon, and Francis Stewart, for defendants in error.

HALL, C. This was an action for equitable contribution, by T. C. Harrill and James A. Harris, as plaintiffs, against C. H. Penn and numerous other persons named, as defendants, the basis of the action being that plaintiffs paid a surety obligation which they claim was a joint liability as to plaintiffs and all defendants. The expression "history of the transaction" may be appropriately used in this case. These transactions commenced about 17 years ago, and this particular cause was tried by the district court in the year of 1925. Briefly, the facts are as follows: A number of persons, including plaintiffs and defendants, in the year of 1911, in the town of Wagoner, organized an unincorporated "camp" or "lodge" of a fraternal association known as the "Modern Woodmen of America." The lodge or camp was without a satisfactory building or hall in which to meet and assemble for its usual business. After due notice to all its members, and at a regular meeting of the lodge, it was decided by the attending members that the lodge should construct or build a building suited to its purposes. At one of the meetings it appears from the recorded minutes that 41 members were present, and resolutions were voted and adopted by a majority of 40 to one in favor of purchasing a lot and the erection of a building hereon. At various subsequent meetings the lodge as a body took action towards appointing committees, receiving the reports of committees and in general taking vigilant action towards the commencement and completion of the enterprise. Committees were appointed to purchase a lot, and a lot was purchased. A building committee was appointed. A resolution was adopted appointing a committee for a term of six years to handle the real estate, with full authority to mortgage the same to accomplish the intended purpose, the construction and financing of the enterprise. Certain persons were named on these numerous committees, and after the cost of the building was estimated, a lender of the necessary funds was secured, and notes and a mortgage were executed by a committee known as the "trustees" of the lodge. But due to the fact that just a small sum was paid on the lot, or building site, and for

many other reasons sufficient to an investor or any other person with any degree of business prudence, the lender or mortgagee would not advance the money until the lodge or the persons interested could secure the signatures of at least two persons with a satisfactory financial rating as sureties or indorsers of the notes. This building committee timely interviewed plaintiffs, and secured their signatures to the promissory notes as indorsers thereof. The building was constructed, and it appears that it was in use for several years; but the ultimate result was that the mortgage thereon was foreclosed, the property sold at a foreclosure sale, and a deficiency judgment rendered against plaintiffs, which judgment they paid; the deficiency being the sum of $6,220.57. By agreement among plaintiffs, this sum was jointly paid, each paying one-half thereof. The plaintiffs then filed this action asking for an equitable decree of contribution among the defendants, alleging that the members of the lodge at the time of the transaction, who were not named as defendants, were dead, or beyond the jurisdiction of the court, or insolvent, or had made voluntary contributions.

The recorded transactions of the lodge, the transactions commencing immediately after the notes and mortgage were executed, and ending about one year thereafter, and after the completion of the building, were destroyed after this action was filed. This record book was in the custody of the secretary of the lodge, who was a defendant in this action. Pages 60 to 103. inclusive, were torn from the book. The secretary testified that if the spoliated minutes in the record book could be produced, they would show some transaction or action by the lodge at each meeting during this period of time with reference to this enterprise.

It is elementary that there can be no liability because of the mere membership in this lodge or association. The liability or nonliability of each defendant is to be determined by the position he, as an individual, took during the entire transaction, or some part of the transaction in which he either aided in the creation of the obligation or enterprise, or, later, assented to or ratified the action of those who did put the enterprise in motion or consummate the transaction.

This case is controlled by the principles of law applied, and the holding in the case of Ash v. Guie. 97 Pa. St. 493, 39 Am. Rep. 818, in which case it was said:

"The proof fails to show that the officers, or a committee, or any number of the members, had a right to contract debts for the building of a temple, which would be valid against every member from the mere fact that he was a member of the lodge. But those who engaged in the enterprise are liable for the debts they contracted, and all are included in such liability who assented to the undertaking or subsequently ratified it. Those who participated in the erection of the building, by voting for and advising it, are bound the same as the committee who had it in charge. And so with reference to borrowing money. A member who subsequently approved the erection or borrowing could be held on the ground of ratification of the agent's acts. We are of the opinion that it was error to rule that all the members were liable as partners in their relation to third persons in the same manner as individuals associated for the purpose of carrying on a trade."

This same principle was announced in the case of Clarke v. O'Rourke (Mich.) 69 N. W. 147. See, also, the case of Robbins Company v. Cook (S. Dak.) 173 N. W. 445, 7 A. L. R. 218, and note appended thereto.

Plaintiffs in error next contend that they were deprived of the benefit of the presumption which followed the destruction or spoliation of the instruments, the records disclosing the proceedings of the lodge during the time the building was in process of construction and its completion. The contention is well taken.

While it is difficult to define to what extent this presumption must be indulged, in order to fasten liability to all the members of the lodge, it is clear that in a case of this particular nature, where the transactions of an assembly are sought to be proved, the minutes or journals thereof constitute evidence of the highest degree of importance. Testimony of witnesses as to what definitely occurred in large assemblies of men is very unsatisfactory. Therefore, the destruction or spoliation of these records invokes the rule that:

"It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other to have contradicted." Section 19, Jones on Evidence (2nd Ed.).

And the destruction of this evidence, while it was in the custody of one of the defendants, together with the other evidence in this case. raises a presumption that all the defendants assented to or participated in or ratified the acts of the lodge and building committee in incurring this indebtedness. The pertinent rule is stated in Jones'

Commentaries on Evidence (2nd Ed.) vol. 1, secs. 83 and 85, as follows:

"Closely allied with the presumption of innocence are the presumptions which arise against persons who * * * suppress or destroy testimony. * * * The scope of the presumption is broad. In fact, it is as broad as the conceivable circumstances in which it may have logical application. Necessarily, from its very nature, the presumption varies in weight with the nature of the conduct complained of as tending to call for its application in a particular case, and likewise varies with the importance of the evidence in question; but, as indicated by the title, it applies to falsification, fabrication, suppression or destruction of evidence with equal weight except as varied by particular circumstances. Accordingly, if it is shown that a person has attempted to falsify, fabricate, suppress. or destroy evidence, such conduct may be justly construed as an indication of his consciousness that his case or defense is lacking merit. * * *

"The willful destruction, suppression, alteration or fabrication of documentary evidence properly gives rise to the presumption that the documents, if produced, would be injurious to the one who has thus hindered the investigation of the facts. It is well to recognize that this presumption is founded on the natural inference to be drawn from the fraudulent conduct of the party affected by it, that where, in the conduct of his case, he has thought it expedient to resort. to fraud or deceit, he has himself been conscious that on the strength of the case alone he would fail; or, in other words, that, recognizing the weakness, he can only invigorate it by the deceit of making and adding to it false testimony, or, by lopping off and suppressing the malignant parts, cause it to present a healthy appearance before a tribunal. The one inference leads to the other, and the fact or his endeavor fraudulently to alter the features suggests quite naturally the weakness of the cause itself. His own conduct has so granted it."

Defendants in error contend that the rule cannot apply because the documents which were destroyed were in the custody of a member of the lodge and agent of the plaintiffs, as well as agent of the defendants. That contention is not tenable. If that rule obtained, the agents or employees of a partnership could destroy or spoliate records of the partnership business, and the complaining partner in a suit against the other members of the firm would be deprived of the benefits of the above wholesome principle of the law of evidence.

We do not mean to indicate that the presumption is conclusive, as this same author says:

"In some cases it has been contended that when spoliation is once shown, it should be assumed that the contents of the documents are as alleged by the opposite party. But it may well be questioned whether the presumption should be carried to this extent."

What we hold in this case is, that unquestionably the building was authorized and constructed by some persons in this lodge in addition to the plaintiffs. The minutes disclosed the various committees appointed and their activities, and the actions of the trustees and the vote of the assembly—40 in favor of the project and one against it— clearly indicate that this project was not a one-man or two-man proposition; and this having been shown, together with other matters as to the indorsement of the paper and the payment of the obligation by plaintiffs, the plaintiffs may rest upon the proof of these circumstances, upon which the existence of the actionable facts may be legitimately inferred as binding on all members of the lodge, unless they explain to the court with satisfactory evidence that they were nonparticipants and did not come within the rule of liability we have heretofore announced. This inference is based upon the presumption which follows the spoliation or destruction of the minutes of the lodge. The presumption need not be relied on to charge legal liability to those persons concerning whom the evidence disclosed were instrumental in constructing the building who subsequently ratified the act.

Defendants advance the proposition that the members of the lodge never intended to incur any personal liability, and cite the resolution which authorizes the committee to execute a mortgage on their real estate and handle the real estate.

We cannot agree with such contention. Every man is presumed to know the natural consequences of his own acts. Reasonable men understand that, in constructing buildings and purchasing real estate, unless the same is a cash transaction, it cannot be done without incurring personal liabilities. A mortgage is but a security for a debt. The case at bar is very much different from the cases cited by defendants in error. It is elementary that a special power of attorney or authority only to mortgage a piece or parcel of land will operate no further than the power to execute a valid lien against the land. But in the present case, the building committee, in erecting and financing a building for the lodge, were not mortgaging property primarily, but were building a

house. Their object was the construction of the building and financing it, and the mortgage was but an incident. It is no answer or defense to their liability that they thought the enterprise might be self-supporting, or that they did not in fact intend to become personally responsible. 25 R. C. L. 64, sec. 20; 5 C. J. 1351; Medlin v. Ebenezer Methodist Church (S. C.) 129 S. E. 830.

It is next contended by defendants in error that plaintiffs cannot maintain this action, because they did not sue separately instead of jointly. Whatever might have been the rule at common law and it appears that such was the rule—this being a proceeding in equity asking for an equitable contribution, equity favors the rule which permits all cosureties, or persons liable in contribution to be made parties plaintiff or parties defendant, so that the matter can be adjusted and the liability established by a single decree. Furthermore, under sections 218 and 220, C. O. S. 1921, this action could be maintained strictly as an action at law, without a petition seeking general or special equitable relief. Burkett v. Lehmen-Higginson Grocery Co., 8 Okla. 84, 56 Pac. 856; Pomeroy's Remedies and Remedial Rights (2nd Ed.) section 185; Clapp v. Rice (Mass.) 77 Am. Dec. 387, in which case it was said:

"We are of opinion that when three persons, each of whom is responsible for an entire sum due from another, join in making the payment of that sum by a contribution agreed on among themselves for that purpose, they may join in one action to recover it from the person for whose benefit the payment has been made. The principle was settled in the case of Hadsell v. Hancock, 3 Gray, 526; and is not only highly equitable in itself, **but is beneficial in its operation to the defendants, by avoiding a multiplicity of suits.**" (Emphasis ours.)

The rule in this case as to the right of plaintiffs to enforce contribution is stated in 5 C. J. 1864, sec. 100, as follows:

"A member of an association who has been compelled to pay a debt may enforce contribution in equity from the other members."

Possibly the judgment was correct as to some of the defendants; but under our view of the law, a new trial must be had, and the cause should be resubmitted as to all parties involved, in accordance with the views herein expressed.

For the reasons herein stated, the judgment is hereby reversed, with directions to the lower court to grant a new trial.

TEEHEE, JEFFREY, HERR and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.