2000 OK CIV APP 45

**Carolyn BEVERLY, Appellant,**

v.

**WAL–MART STORES, INC., Choice Orient, Inc., and Charleswood Corporation, Appellees.**

No. 93,672.

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 28, 1999.

Certiorari Denied Feb. 29, 2000.

---

David W. Little, Oklahoma City, Oklahoma, for Appellant.

Kenneth D. Upton, Jr., Noland, Upton & Wenzel, P.C., Oklahoma City, Oklahoma, for Appellee Choice Orient.

Robert D. Looney, Jr., Looney, Nichols & Johnson, Oklahoma City, Oklahoma, for Appellee Charleswood.

Chris Condren, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, Oklahoma, for Appellees Wal–Mart and Charleswood.

REIF, J.

¶1 Plaintiff Carolyn Beverly appeals the summary judgment in favor of the three defendants on her products liability claim. The three defendants were the seller, distributor, and importer/manufacturer of the chair that allegedly caused Plaintiff's injury. Plaintiff's petition alleged the chair had a "defective condition which made it unreasonably dangerous to its users." The petition also stated that the "chair, upon which Plaintiff was seated, broke causing Plaintiff to fall and suffer severe injuries." The petition further alleged that "Plaintiff's injuries are the result of the chair's defective condition." In her deposition, however, Plaintiff admitted (1) she did not examine the chair, (2) did not personally see any breaks, fractures, or broken parts, and (3) did not have any photographs or sketches of the chair. An affidavit from the only person to witness Plaintiff's fall stated that Plaintiff had "lean[ed] back in her chair in order to reach a file shelf on the wall behind her [and] the chair she was seated in tipped back and she fell to the floor." The affidavit from this eyewitness further states, "The chair did not break before it tipped over." Plaintiff did not dispute these facts in opposing defendants' motions for summary judgment.

¶2 Despite these undisputed facts, Plaintiff has nonetheless argued both in the trial court and here on appeal that summary judgment was not proper. Plaintiff has contended that inferences to support her claim could be drawn from (1) the loss of the chair after it was returned to defendant-seller, and (2) defendants' discovery disclosure of some twenty reports that an "identical, similar or comparable product was defective in any manner whatsoever, or involved in an acci-

dent of any nature whatsoever." The trial court obviously rejected these contentions and this court likewise finds them without merit.

¶ 3 Regarding the loss of the broken chair, we note that Oklahoma law has long recognized the existence of an adverse presumption that follows "the destruction or spoliation" of evidence. *Harrill v. Penn,* 134 Okla. 259, 273 P. 235, 237 (1929). This case observes that "the presumption varies in weight with the nature of the conduct complained of . . . in a particular case, and likewise varies with the importance of the evidence in question." The presumption arises "if it is shown that a person has attempted to . . . suppress or destroy evidence, [because] such conduct may be justly construed as an indication of his consciousness that his case or defense is lacking in merit." *Id.* However, the presumption arises only in cases of "willful destruction [or] suppression." "[T]his presumption is founded on the natural inference to be drawn from the fraudulent conduct of the party affected by it [who] has thought it expedient to resort to fraud and deceit." *Id.* (emphasis added). In applying this rule to the summary judgment record in this case, we fail to find "willful" or "fraudulent conduct" to destroy or suppress evidence relevant to a known case or claim.

¶ 4 The summary judgment record reveals that the chair in question belonged to Plaintiff's employer, a nursing home. Plaintiff testified at deposition that she did not have the chair because: "They [i.e., her employer nursing home] took the chair back [to the seller]." In her response to the defendants' motions for summary judgment, Plaintiff also stated: "Subsequent to the chair breaking, Plaintiff's employer returned that chair to [defendant-seller] for a refund of the purchase price." An affidavit by an employee of Plaintiff's employer stated: "The chair was broken at the base where the seat joins the pedestal [and] I returned [the] broken chair to [defendant-seller] who credited the account of [employer] for the purchase price." There is nothing in the summary judgment record to indicate when the broken chair was returned. The most that the record shows is that the chair was unavailable July 28, 1995,

some five weeks after her injury on June 21, 1995. A letter dated July 28, 1995, is the earliest request to inspect the returned chair made by Plaintiff *that appears in the record.*

¶ 5 Plaintiff's summary judgment materials also included a letter from the distributor of the chair that states "the chair was returned to [defendant-seller] and from there [defendant-seller] sends the product either to a return center or a salvage center." The letter indicates that "there is no way of tracking this chair." The discovery response of the defendant-seller states that the defendant-seller "does not know the location of the product that is the subject of this litigation."

¶ 6 Nothing in the foregoing shows that the loss of the chair was the result of willful or fraudulent destruction or suppression of evidence of a legal claim against seller, or other parties with whom the seller was united in interest.

¶ 7 In the context of a summary judgment, appellate courts in at least two states have held that a claim of spoliation of evidence will not defeat a summary judgment in the absence of some wrongdoing on the part of the party that lost or destroyed the evidence. See *Marshall v. Bally's Pacwest, Inc.,* 94 Wash.App. 372, 972 P.2d 475, 479–80 (1999), and *Burns v. Cannondale Bicycle Co.,* 876 P.2d 415, 419 (Utah Ct.App.1994). The *Marshall* case indicates that spoliation of evidence gives rise to a rebuttable presumption while the *Burns* case indicates it allows for an adverse inference to be drawn.

¶ 8 The *Marshall* case adopted the Black's Law Dictionary definition of "spoliation" which is the intentional destruction of evidence. The court in *Marshall,* 972 P.2d at 480 (citations omitted), stated that "[t]o remedy spoliation the court may apply a rebuttable presumption, which shifts the burden of proof to a party who destroys or alters evidence." However, "[i]n deciding whether to apply a rebuttable presumption in spoliation cases, two factors control: '(1) the potential importance or relevance of the missing evidence; and (2) the culpability or fault of the adverse party.'" *Id.* "Culpability turns on whether the party acted in bad faith or whether there is an innocent explanation for the destruction." *Id.* The Washington Court

of Appeals upheld a summary judgment in *Marshall,* despite the destruction of the treadmill that allegedly injured the plaintiff, because the trial court rightly concluded that the treadmill was not destroyed in bad faith.

¶ 9 The *Burns* case involved a products liability claim. The plaintiff alleged he was injured by a defective part in his bicycle's braking system. The plaintiff admitted he could not prove the existence of a defect; but argued "the existence of a defect would properly be inferred if the fact finder determined [that a defendant who serviced the bicycle] disposed of a part while it had [the] bike in for repair." *Burns,* 876 P.2d at 419. The Utah Court of Appeals stressed that the doctrine of spoliation of evidence applies where a party to an action fails to provide or destroys evidence favorable to the opposing party. Upon a showing of such conduct, "the court will infer the evidence's adverse content." *Id.* (citations omitted). However, "such an inference will be drawn '[w]here one party wrongfully denies another the evidence necessary to establish a fact in dispute.'" *Id.* (emphasis added) (citations omitted).

¶ 10 In *Burns,* the plaintiff's theory of wrongful conduct was that the defendant who serviced the bike had discarded a defective part to hide that fact. The Utah Court of Appeals noted that the defendant who serviced the bike denied discarding any parts. The court went on, however, to reject the spoliation inference, "even if such a defective part existed and was discarded." *Id.* The court first observed that the plaintiff "had not brought suit for his injuries, nor even notified defendants that he was considering such action, at the time the part was allegedly discarded." *Id.* The court next observed that there was no "general duty requiring defendants to retain the allegedly discarded part [and therefore] defendants did not act wrongfully even if they did discard the part." *Id.* The court concluded by noting that "even assuming that a part was discarded, it cannot be inferred that the part was defective because defendants had no notice of the pendency of [plaintiff's] legal claim nor a duty to retain the part on any other basis."

¶ 11 In the instant case, the primary reason the chair in question was not kept or preserved was the act of Plaintiff's employer in returning the chair for a refund-credit. The fact that the defendant-seller accepted return of the chair in a broken condition and gave a refund-credit to Plaintiff's employer does not provide an inference that seller should expect that any other legal liability may arise from the broken chair. As previously noted, there is nothing in the record to indicate when the chair was returned, but the record is equally silent that seller had any notice that the chair had allegedly caused injury to Plaintiff or anyone else at the time of the return and credit. The summary judgment materials reflect that defendant-seller either shipped the returned chair to a return center or a salvage center, however; the record is silent that defendant-seller had any notice that the chair had allegedly caused injury to Plaintiff or anyone else at the time it was shipped out by defendant-seller. There is certainly nothing to show or support an inference that the disposal of the chair was willful, fraudulent, intentional, culpable, in bad faith, wrongful, or in breach of any duty to preserve it. To the contrary, the record shows that the chair was disposed of in the normal course of business—"an innocent explanation for the destruction"—and such disposal cannot furnish an inference it was defective, because "defendants had no notice of the pendency of [plaintiff's] legal claim nor a duty to retain the [chair] on any other basis."

¶ 12 We likewise find no inference that the chair in question was defective and unreasonably dangerous from defendants' broad discovery disclosure. Plaintiff's discovery request was for any reports of "[a]ny identical, similar or comparable product was defective in any manner whatsoever, or involved in an accident of any nature whatsoever, whether or not personal injury resulted." None of the twenty reports listed by defendants in response reveal what alleged defects were reported, or the types of accidents reported. Significantly, Plaintiff did not ask for such details.

¶ 13 We do not believe that the case for an inference from this general discovery disclosure is helped by the letter from the claims representative for the defendant-distributor

to the defendant-importer/manufacturer. The letter states that "the base of the chair broke and caused the claimant to fall to the ground." The letter also states that "this is not the 1st chair to have this problem nor the 1st chair to cause injuries." This letter bases these assertions on an "investigation," but does not indicate the source(s) of any information obtained in the investigation. This letter also does not take into account the statement of the only eyewitness to the accident that "[t]he chair did not break before it tipped over."

¶ 14 The record reflects that Plaintiff fell as the result of the chair tipping over as she leaned back to reach behind her and that "[t]he chair did not break before it tipped over." Simply put, Plaintiff did not fall and injure herself as the consequence of chair breaking; Plaintiff fell as a consequence of her act of leaning back to reach for something behind her and tipping over the chair. The chair was broken as a consequence of tipping over and falling with Plaintiff.

■ ¶ 15 As the *Burns* case points out, the fact that someone was injured while using the product does not establish that the product was unreasonably dangerous when put to its intended use. 876 P.2d at 418 (citation omitted). "It is not enough to merely contend that a defect existed, show that an accident occurred, and assume the two are necessarily related." *Id.* (footnote omitted). "[T]he plaintiffs must provide sufficient evidence [or in the case of a summary judgment, evidentiary material] raising 'a reasonable inference from which the fact finder may rationally conclude that plaintiff[s'] injuries and damages proximately resulted from the product's failure of performance causally related to its defective condition.'" *Id.* Plaintiff in the instant case failed in producing evidentiary material on summary judgment to meet this burden. Accordingly, the summary judgment was properly granted.

¶ 16 AFFIRMED.

¶ 17 STUBBLEFIELD, P.J., and GOODMAN, V.C.J. (sitting by designation), concur.