[No. 22946-3-II. Division Two. February 12, 1999.]

KIM MARSHALL, *Appellant*, v. BALLY'S PACWEST, INC., ET AL., *Respondents*.

*John R. Christensen* of *Messina Law Firm*, for appellant.
*Linda B. Clapham* and *Michael H. Runyan* of *Lane Powell Spears Lubersky, L.L.P.*; *Tyna L. Ek* of *Merrick, Hofstedt & Lindsey, P.S.*; and *Tamara S. Clower* of *Law Office of John F. Kennedy*, for respondents.

ARMSTRONG, A.C.J. — Kim Marshall sustained personal injuries while exercising on a treadmill at her health club, Bally's Pacwest. The treadmill was manufactured by Life Fitness and installed and maintained by Washington Athletic Repair. Marshall filed a negligence action against Bally's, Life Fitness, and Washington Athletic Repair. Marshall testified at her deposition that she had no recollection of how the accident occurred. The trial court granted summary judgment in favor of the defendants, principally because in the absence of any evidence as to how the accident occurred, Marshall could not show that the alleged fault of the defendants was a proximate cause of her injuries. On appeal, Marshall argues that the trial court

erred in (1) concluding proximate cause could not be established; (2) granting summary judgment in light of newly discovered evidence; and (3) failing to recognize her claim of spoliation. We affirm.

## FACTS

On May 16, 1993, Kim Marshall was injured on a treadmill at Bally's Pacwest in Tacoma. The treadmill was designed, manufactured and owned by Life Fitness, which leased it to Bally's. Life Fitness contracted with Washington Athletic Repair to install the treadmill and perform any necessary maintenance.

On April 6, 1993, Washington Athletic assembled the treadmill along with other identical treadmills at Bally's. After installing the machines, Washington Athletic ran the treadmills to ensure they were operating correctly. All treadmills operated properly.

Marshall alleges the following version of events in her amended complaint and answers to interrogatories. On May 16, 1993, she was exercising on the treadmill at Bally's when it stopped abruptly in the middle of her program. After the treadmill stopped, Marshall reprogrammed it and pushed the "start" button. But the treadmill allegedly restarted at 6.2 miles per hour rather than its usual 2.5 miles per hour. Marshall contends that because of the sudden and unexpected start, she was violently thrown from the treadmill, causing severe injuries when her head struck a plexiglass wall behind the machine. But Marshall testified in her April 17, 1997, deposition that (1) she did not recall how abruptly the treadmill reached full speed; (2) she did not recall being "thrown" from the treadmill; and (3) she did not recall hitting the glass behind the wall. Rather, the last thing Marshall recalls is resetting the machine after it stopped.

In response to the trial court's questions regarding her lack of memory, Marshall's counsel stated, "She has a two-week lapse in memory because of this. She does not recall

what happened." Further, Marshall concedes on appeal that she does not recall the specifics of how fast the machine restarted.

After Marshall's accident, the treadmill was used continuously and routinely cleaned and maintained. On November 18, 1993, Washington Athletic installed new central processing units (CPUs) in all Life Stride 9500 model treadmills, including the subject treadmill. No request was made to retain or preserve the CPU removed from the machine. The treadmill was operational until its frame broke on April 22, 1997, nearly four years after Marshall's accident. At the request of Life Fitness, Bally's returned the machine to Life Fitness in Chicago for replacement.

Marshall sued on March 20, 1996, alleging: (1) Bally's negligently failed to maintain safe premises; (2) Life Fitness negligently designed and manufactured the treadmill; and (3) Washington Athletic negligently failed to repair and maintain the treadmill. On September 8, 1997, over four years after the accident, Marshall's attorney requested an inspection of the Life Stride treadmill for the first time. On October 14, 1997, Bally's informed Marshall that the treadmill had been sent back to Chicago on June 4, 1997. On October 17, 1997, Marshall's expert was allowed to inspect an identical treadmill at Bally's. But he stated he could not fully form an opinion without inspecting the actual treadmill.

Bally's, Life Fitness, and Washington Athletic were dismissed by summary judgment on January 16, 1998, for lack of evidence establishing proximate cause. The trial court also based Bally's dismissal on waiver and release language in Marshall's membership contract.[1]

---

[1]Marshall's membership contract with Bally's provides:

12. WAIVER AND RELEASE. You (the Buyer and Member) agree that you are aware that you are engaging in physical exercise, including the use of exercise equipment, club facilities, training and instruction, which could cause injury to you. You are voluntarily participating in these activities and assume all risks of injury to you that might result. You hereby agree to waive any

## Standard of Review

When reviewing a summary judgment order, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A summary judgment motion can be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980). The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 530, 503 P.2d 108 (1972) (citation omitted).

■ After the moving party has submitted adequate affidavits, the nonmoving party must set forth specific facts rebutting the moving party's contentions and disclosing the existence of issues of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain. *Vacova Co. v. Farrell*, 62 Wn. App. 386, 395, 814 P.2d 255 (1991). The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Morris v. McNicol*, 83 Wn.2d 491, 494-95, 519 P.2d 7 (1974).

## Proximate Cause

Marshall argues that she set forth sufficient facts connecting her injuries to the allegedly defective treadmill. Marshall points to isolated excerpts from her deposition testimony to link the respondents' alleged negligence to her injuries.

■■ The mere occurrence of an accident and an injury does not necessarily lead to an inference of negligence.

---

claims or rights you might otherwise have to sue Seller, its employees or agents for injury to you on account of these activities.

378

*Tinder v. Nordstrom, Inc.*, 84 Wn. App. 787, 792-93, 929 P.2d 1209 (1997). In order to prove actionable negligence, a plaintiff must establish the existence of a duty, a breach of this duty, and a resulting injury. *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 474, 951 P.2d 749 (1998). For legal responsibility to attach to negligent conduct, the claimed breach of duty must be a proximate cause of the resulting injury. *Pratt v. Thomas*, 80 Wn.2d 117, 119, 491 P.2d 1285 (1971); *Ferrin v. Donnellefeld*, 74 Wn.2d 283, 285, 444 P.2d 701 (1968). Even if negligence is clearly established, the respondents may not be held liable unless their negligence *caused* the accident.

■ ■ While issues of negligence and proximate cause are not generally subject to summary adjudication, courts are not precluded from rendering such judgments. *LaPlante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975) (citations omitted). Where the facts are undisputed and reasonable persons could reach but one conclusion, the question of proximate cause is one of law subject to review. *Mejia v. Erwin*, 45 Wn. App. 700, 705, 726 P.2d 1032 (1986).

Here, Marshall alleges a malfunctioning treadmill placed in an unsafe location caused her injuries. In answers to interrogatories, Marshall stated that she set the machine for 15 minutes, it stopped at 13 minutes, she reset the machine, it started at a faster pace of 6.2 miles per hour, and she was thrown off, hitting her head on the glass behind her. In her deposition, Marshall initially repeated this version of events. When questioned, however, she testified that she had no memory of any of these events other than resetting the machine after it stopped. And Marshall conceded that she could not recall if her boyfriend supplied the interrogatory answers. Further, at the summary judgment hearing, the court questioned Marshall's attorney:

> THE COURT: Counsel, before you move off that, there's no facts here that your client hit something to the side. In fact, isn't it her version that she went straight back?
>
> [COUNSEL]: No, it is not. She does not recall.
>
> THE COURT: She doesn't recall how anything happened?

[COUNSEL]: She has a two-week lapse in memory because of this. She does not recall what happened. The medical records in this case document that she has a brain injury from a traumatic event to the head. Whether she hit that on the floor, whether she hit it on the side, I'm not sure.

Thus, it is undisputed that Marshall is unable to articulate specific facts about how the accident occurred.

Here, Marshall gave clear answers to unambiguous deposition questions that demonstrate her total lack of memory regarding the accident. As such, Marshall cannot now point to isolated excerpts from her deposition testimony as establishing a genuine issue of material fact.

"When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."

*Duckworth v. Langland*, 95 Wn. App. 1, 7-8, 988 P.2d 967 (1998) (quoting *Marshall v. AC&S Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989) (quoting *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)).

Without any memory of the accident, Marshall simply offers a theory as to how she sustained her injuries. But a verdict cannot be founded on mere theory or speculation.

[I]f there is nothing more tangible to proceed upon than two or more conjectural theories under one or more of which a defendant would be liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture how the accident occurred.

*Gardner v. Seymour*, 27 Wn.2d 802, 809, 180 P.2d 564 (1947) (citations omitted).

In short, Marshall provides no evidence that she was thrown from the machine, what caused her to be thrown from the machine, or how she was injured. Given this failure to·produce evidence explaining how the accident oc-

curred, proximate cause cannot be established.[2] Because Marshall did not produce evidence of proximate cause, she failed to produce evidence sufficient to withstand summary judgment. *See Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 66, 837 P.2d 618 (1992) (a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial).

Newly Discovered Evidence

Marshall argues that the trial court erred in granting summary judgment in light of "newly discovered" evidence. Marshall maintains that evidence regarding the replacement of the central processing units and logic chips on Life Stride 9500 treadmills was concealed and provided only after the defendants moved for summary judgment.[3] Marshall alleges that the replacement supports an inference of a design defect and that "further discovery is essential to explore the connection between these repairs and [her] injuries." We disagree.

Washington Athletic changed the CPU and logic chips six months after Marshall sustained her injuries. On the date of service, the treadmill had been continuously used and subjected to normal wear and tear. Records show that on November 18, 1993, the treadmill had logged 8,615 miles and had been used for 1,941 hours. Thus, the replacement of the CPU and logic chip does not support an inference that the treadmill was defective six months earlier on the date of Marshall's accident.

■ Even assuming the treadmill was defective, Marshall

---

[2]Life Fitness correctly notes that it is equally plausible that Marshall incurred her injuries after tripping and falling or after fainting. As "there is nothing more tangible to proceed upon than two or more conjectural theories," the trial court did not err in granting summary judgment. *Gardner*, 27 Wn.2d at 809.

[3]This information was produced on December 23, 1997. The summary judgment hearing occurred on January 16, 1998. Washington Athletic agreed to continue the motion for summary judgment to allow Marshall to redepose Gary Severson regarding the documentation produced on December 23. But the trial court found the additional documentation would not assist Marshall with her essential causation problem.

has offered no evidence as to how she fell or what caused her to be thrown from the machine. It follows that she can not show that her injuries were caused by any defect in the machine. Thus, a jury would be required to speculate that a defect in the treadmill *caused* Marshall's accident. A claim of liability resting only on a speculative theory will not survive summary judgment. *See Gardner,* 27 Wn.2d at 808 (jury is not allowed to resort to conjecture to determine the facts) (citation omitted).

Spoliation

 Marshall assigns error to the trial court's failure to recognize her claim for spoliation. Because the treadmill was destroyed before its inspection, Marshall maintains she is entitled to a favorable evidentiary presumption.

Spoliation is the "intentional destruction of evidence." BLACK'S LAW DICTIONARY 1401 (6th ed. 1990); *Henderson v. Tyrrell,* 80 Wn. App. 592, 605, 910 P.2d 522 (1996). Of the few Washington cases that directly address spoliation, the most prominent is *Pier 67, Inc. v. King County,* 89 Wn.2d 379, 573 P.2d 2 (1977). The court held:

> [W]here relevant evidence which would properly be a part of a case is within the control of a party whose interests it would naturally be to produce it and he fails to do so, without satisfactory explanation, the only inference which the finder of fact may draw is that such evidence would be unfavorable to him.

*Pier 67,* 89 Wn.2d at 385-86. To remedy spoliation the court may apply a rebuttable presumption, which shifts the burden of proof to a party who destroys or alters important evidence. *Henderson,* 80 Wn. App. at 605 (citing *Sweet v. Sisters of Providence,* 895 P.2d 484, 490-91 (Alaska 1995)).

In deciding whether to apply a rebuttable presumption in spoliation cases, two factors control: "(1) the potential importance or relevance of the missing evidence; and (2) the culpability or fault of the adverse party." *Henderson,* 80 Wn. App. at 607 (citations omitted). In weighing the importance of the evidence, the court considers whether

the adverse party was afforded an adequate opportunity to examine it. *Henderson*, 80 Wn. App. at 607. Culpability turns on whether the party acted in bad faith or whether there is an innocent explanation for the destruction. *Id.* at 609.

In *Henderson*, the issue was whether discovery sanctions should be imposed for the destruction of an automobile involved in an accident. That the defendants waited over two years to examine the evidence proved central to the decision. "[T]he trial court reasonably concluded the 'real culprit here was the passage of time.' The Hendersons had ample opportunity to obtain the evidence they now claim was essential to their case. Mr. Tyrrell should not bear the burden of their failure to do so." *Henderson*, 80 Wn. App. at 611. The questionable evidentiary value of the car coupled with the plaintiff's reasonable explanation for its destruction led the court to reject the spoliation claim.

The *Henderson* reasoning applies here. Although Marshall was injured on May 16, 1993, she did not request an inspection of the treadmill until September 8, 1997, over four years later. And she failed during the four years to ask that the treadmill be preserved. Following the logic of *Henderson*, Marshall had ample opportunity to obtain the evidence she now claims is essential to her case. *Henderson*, 80 Wn. App. at 611. Concerning the culpability of the parties, the trial court noted:

> I was not happy when I figured out . . . that it had been destroyed. That's why I used the example of the auto accident where a car was destroyed within days. That always gives me a lot of concern. This is just not a situation that's similar to that, where you have a machine continuing to be used for a number of years.

Thus, the court implicitly concluded that the treadmill was

not destroyed in bad faith. We find no error in the rejection of Marshall's spoliation claim.[4]

In view of our decision on proximate cause, we need not address Bally's additional argument that it is not liable because of the exculpatory language in Marshall's membership contract.

We affirm summary judgment in favor of all respondents.

MORGAN and SEINFELD, JJ., concur.

---

[4]In addition, even if Marshall received an evidentiary presumption that the treadmill was defective, her claim would still fail on summary judgment because she cannot show that the presumed defect *caused* her accident. *See Barry v. Stop & Shop Cos.*, 24 Mass. App. Ct. 224, 507 N.E.2d 1062, 1065 (1987).