## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CEDAR COURT APARTMENTS, LLS, a Washington Limited Liability Company, | No. 47778-5-II |
| Respondent, | |
| v. | |
| GUSTAVO and MARIA COLORADO, husband and wife, and the marital community composed thereof, | UNPUBLISHED OPINION |
| Appellants. | |

SUTTON, J. — Gustavo and Maria Colorado appeal the trial court's judgment as a matter of law that set aside the jury's verdict against Cedar Court Apartments, LLC (Cedar Court) for the Colorados's failure to prove Cedar Court caused a fire in the Colorados's apartment. Viewing the evidence in a light most favorable to the Colorados, we hold that there is neither substantial evidence nor a reasonable inference to support the jury's verdict, and we affirm the trial court's order setting aside the jury's verdict.

## FACTS

### I. BACKGROUND AND TRIAL

On February 21, 2013, around 4:30 p.m., a fire ignited and destroyed the apartment the Colorados leased from Cedar Court. Cedar Court sued the Colorados for negligence. The

Colorados counter sued for negligence. The parties stipulated that the sole question for the jury was which party negligently caused the fire.[1] The jury heard the following testimony and evidence.

On the morning of the fire, the Colorados prepared for a scheduled carpet cleaning and moved all of their belongings into the kitchen and bathroom. Gustavo testified that he placed items in boxes, but was careful to place the boxes "on the floor away from the stove." III Verbatim Report of Proceedings (VRP) at 219. After moving their belongings, Gustavo said that he "couldn't reach the stove" because the "stove was blocked with some mattress (sic), some furniture." III VRP at 211-12. He denied placing anything on the stove when they left the apartment for the day. On cross-examination, counsel asked Gustavo if he placed anything on top of the stove to prepare for the carpet cleaners and he answered, "I don't remember to do something like that." II VRP at 212. The jury later submitted questions asking whether Gustavo had placed a mattress against the stove or placed anything on top of the stove. Gustavo replied, "No, I didn't," and "No, nothing," respectively. III VRP at 219.

Gustavo also testified that, on the morning of the fire, he went to Cedar Court's management office around 10:00 to 10:30 a.m. to request a maintenance work order to have the stove repaired because the large burners were not working. Maria testified that she noticed a problem with the stove about two weeks before Gustavo requested the repair and that she had reminded Gustavo of the problem the day before the fire and again the morning of the fire. The Colorados did not use the stove at all on the day of the fire "because it was not working." III VRP

---

[1] Neither party requested a jury instruction on comparative negligence.

at 184, 212.  The Colorados left the apartment at around 10:30 to 11:00 a.m. to allow the carpet to be cleaned.

More than a year before, the Colorados first reported to Cedar Court that the stove was malfunctioning and that the large burners were "shorting."  Clerk's Papers (CP) at 94, 457.  After receiving that stove repair request, Cedar Court repaired the stove that same day.

Tammy Wheat, Cedar Court's property manager, testified.  Wheat said that on the day of the fire, she filled out the stove repair work order.  Wheat wrote in "11 AM" as the time the work order was requested, and under "Permission to Enter Unit" she placed an "X" next to "Anytime," and Gustavo signed the work order.  CP at 92.  Wheat said that her assistant wrote down in a resident communication log that "Gustavo Colorado filed a work order for two large burners on stove not working" "around 11:00 a.m." on the day of the fire.  IV VRP at 374.

Wheat met with the property's maintenance technician, Alex, at 9:00 a.m. on the day of the fire to discuss his work assignments for that day.  Wheat stated that because the Colorados had not made their stove repair request until around 11:00 a.m., Alex was not assigned the stove repair.  Wheat also contradicted her prior testimony and testified that although Gustavo had requested the work order around 11:00 a.m. the morning of the fire, he did not come into the maintenance office to sign the work order until 4:00 p.m.  She later said that she did not recall when Gustavo came into the maintenance office.  Gustavo confirmed that he signed the work order that morning.

Wheat explained that a Cedar Court employee is not allowed to enter an apartment until the tenant has provided a signed written permission.  Wheat testified that Alex did not have permission to enter the Colorados's apartment until after 4:00 p.m. when Gustavo gave her written permission, that Alex was never given the key to the Colorados's apartment, and, that to her

3

knowledge, Alex never accessed the apartment that day.[2] She also said that she gave Alex the stove repair work order for the Colorados's apartment prior to the start of the fire because "he had time that day to look at the stove." IV VRP at 391.

Wheat testified that the carpet cleaning company (Cleaners) arrived at Cedar Court between 2:15 and 2:30 p.m. and met her at the management office. Three units were scheduled for carpet cleaning that day; two vacant units were scheduled to be cleaned before the Colorados's unit. Wheat said that the Cleaners were given master keys to all three units to be cleaned, including the Colorados. Based on Cedar Court's policies, Wheat testified that she would send the Cleaners into an apartment even if she did not have signed permission from the tenant, and here, the Colorados had specifically requested that their carpet be cleaned that day.

The Colorados returned to their apartment at 4:00 p.m. to check if the carpet had been cleaned. Gustavo testified that while his wife and daughter waited in the car, he opened the door of the apartment, looked inside for a couple of seconds until he realized the carpet had not been cleaned, and then he returned to the car. He stated that he did not smell smoke and that he did not touch anything but the apartment door. As Gustavo returned to his car, he saw a man he believed was a Cleaners employee in the parking lot near the company van. Gustavo "asked him if he can hurry to clean up our carpet so we can get in our apartment." III VRP at 203, 213. Gustavo testified that the man had something in his hands and responded that he had another apartment to clean first. The Colorados then left the apartment complex and went to the library.

---

[2] Wheat testified that there is only one front door key (master key) for each apartment.

A tenant reported the fire to the Cedar Court management office at 4:30 p.m. Wheat testified that when a firefighter requested the key to the apartment, she ran to the unit where the Cleaners were working and retrieved the master key for the Colorados's apartment; by the time she returned, the firefighters had kicked in the door. After the fire was extinguished, firefighter Lieutenant Kenneth Hansen, the arson investigator, was called to the scene. Lt. Hansen's initial site investigation revealed that the firefighters had extinguished and removed all objects that were on fire in the kitchen. The firefighters had also broken through the ceiling above the stove, leaving drywall pieces covering the top of the stove. Lt. Hansen testified that his initial inspection did not reveal a fire source. After his initial site investigation, Lt. Hansen interviewed Wheat and she told him that the Colorados had requested a work order to repair the stove because it was malfunctioning. The Colorados returned to the apartment around 6:30 p.m.

Lt. Hansen concluded that the most likely cause of the fire was that something was left on top of the stove between 4:00 and 4:30 p.m., the stove was accidently turned on, and a fire started.[3] Hansen determined that the heat of the fire was produced in a short amount of time, guessing that the fuel source was a paper product, like "a binder or a cardboard box with some items inside." II VRP at 149. He was unable to determine whether the stove was a glass-top or coil-top burner stove or whether the stove's knobs were turned on because the fire had melted the knobs and their

---

[3] Wheat testified that on the night of the fire, during a meeting with Lt. Hansen and the Colorados, she heard Maria state to Gustavo, in English, "I put something down" in response to Lt. Hansen's conclusion as to the cause of the fire. IV VRP at 333. Maria testified in Spanish at trial through an interpreter, and stated that she does not speak in English because she needs to wait for the translation to understand what has been said. Gustavo testified that his wife only speaks Spanish to family members. At trial, Maria denied that she placed anything on the stove that day.

posts. He did not believe the mattress was the fire's ignition source, and there were no tripped breakers that would indicate a short or arcing in any wiring.

Lt. Hansen did not analyze or assess the wiring of the stove because that was outside his area of expertise. Cedar Court disposed of the stove the day after the fire. During his investigation, Lt. Hansen said that Wheat told him that the Cleaners had been given a master key to the Colorados's apartment that day, but only the Colorados had entered the apartment that day. Lt. Hansen did not interview the Cleaners or Alex.

Deanna Hanshew, an off-site asset manager for Cedar Court, testified that she had no personal knowledge as to who entered the Colorados's unit that day. Hanshew also testified that Wheat did not tell her about the Colorados's stove repair request until weeks after the fire. Hanshew explained that standard maintenance procedure requires that whenever a maintenance person enters an apartment to make a repair, the maintenance person must sign or initial the work order and note "work done" and "materials used" and record the date that the work was completed. III VRP at 276. She reviewed the work orders for the day of the fire. Nothing on the work orders for either the stove repair or the carpet cleaning for the Colorados's apartment indicated that either work order had been completed and given to the maintenance office. For the Cleaners to be paid, a carbon copy of the work order was required to be affixed to the Cleaners's invoice, and Hanshew discovered that the work order still contained all carbon copies at the time of the fire. Thus, Hanshew testified that she had concluded that the stove had not been repaired nor had the Colorados's carpet been cleaned that day, and she stated that when she testified to the contrary at her earlier deposition, she had simply been mistaken.

At the close of the testimony, Cedar Court moved for a directed verdict and argued that (1) the Cleaners acted as an independent contractor, not as an agent of Cedar Court and (2) Cedar Court was not negligent. The trial court denied the motion. The trial court then instructed the jury on the ordinary standard of care for negligence,[4] instructed the jury to decide whether the Cleaners were an agent of Cedar Court or whether the Cleaners were an independent contractor, and instructed the jury that equal weight is to be given to direct and circumstantial evidence.

## II. VERDICT AND TRIAL COURT'S RULING

The jury returned a verdict in favor of the Colorados and a verdict against Cedar Court. The verdict stated that the jury answered "No" to the question: "Was there negligence by the [Colorados] that was a proximate cause of the fire at" the apartment, and "Yes" to the question: "Was there negligence by [Cedar Court] that was a proximate cause of the fire at" the apartment. CP at 705-06.

After the jury's verdict, Cedar Court filed a CR 50 motion for a judgment as a matter of law requesting that the trial court set aside the jury's verdict and enter a judgment in its favor. The Colorados argued that they had circumstantial evidence of Cedar Court's negligence. The trial court stated,

---

[4] Jury Instruction No. 9:

> Negligence is the failure to exercise ordinary care. It is the doing of some act that a reasonably careful person would not do under the same or similar circumstances or the failure to do some act that a reasonably careful person would have done under the same or similar circumstances.

CP at 694. Jury Instruction No. 10: "Ordinary care means the care a reasonably careful person would exercise under the same or similar circumstances." CP at 695.

> All you are really arguing is that there is some possibility that somebody else did it. . . . I don't see how you can prove that by a preponderance of the evidence that they did anything because you can't even show that they were there.

IV VRP at 431. The trial court also stated,

> You have a mere possibility. It is not impossible that they did it. That's all you've got. . . . [T]here is no way in the world that [Cedar Court] had anything to do with the fire, and certainly not the carpet cleaners.
>
> The problem with [Alex] is that there is no evidence that [Alex] ever had a key.

IV VRP at 433-34.

The trial court ruled that, as a matter of law, neither party had provided sufficient evidence that the other party was negligent. The trial court granted Cedar Court's motion for judgment as a matter of law, set aside the jury's verdict, denied Cedar Court's motion to enter judgment in its favor, and denied both parties' request for an award of attorney fees stating that neither party was a prevailing party. The Colorados appeal.

## ANALYSIS

The Colorados argue that the trial court erred in entering a judgment as a matter of law because there is substantial circumstantial evidence or a reasonable inference to sustain the jury's verdict that Cedar Court's negligence proximately caused the fire. The Colorados assert that the trial was a "credibility contest" between Cedar Court and the Colorados, and that the jury found the Colorados's testimony more credible. Br. of Appellant at 2. Cedar Court argues that the Colorados have failed to provide any evidence to support the jury's verdict. We agree with the trial court that the verdict finding Cedar Court negligent cannot be sustained.

## I. STANDARD OF REVIEW

When reviewing a judgment as a matter of law under CR 50, we apply the same standard as the trial court and review the motion de novo. *Grove v. PeaceHealth St. Joseph Hosp.*, 182 Wn.2d 136, 143, 341 P.3d 261 (2014). A CR 50(b) motion is properly granted only when, after viewing the evidence in the light most favorable to the nonmoving party, it can be held as a matter of law that there is not substantial evidence or reasonable inference from the evidence to sustain the verdict. *Grove*, 182 Wn.2d at 143. "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that the premise is true." *Jenkins v. Weyerhaeuser Co.*, 143 Wn. App. 246, 254, 177 P.3d 180 (2008). Circumstantial evidence and direct evidence carry equal weight. *See Smith v. Dep't of Corr.*, 189 Wn. App. 839, 847, 359 P.3d 867 (2015), *review denied*, 185 Wn.2d 1004 (2016).

We defer to the fact-finder on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *Faust v. Albertson*, 167 Wn.2d 531, 543, 222 P.3d 1208 (2009). The jury decides the inferences to be drawn from the evidence. *Grove*, 182 Wn.2d at 143 n.8. Inferences drawn from evidence must be reasonable and not be based on speculation. *Ayers v. Johnson & Johnson Baby Prod. Co.*, 117 Wn.2d 747, 753, 818 P.2d 1337 (1991). A verdict cannot be founded on mere theory or speculation. *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 379, 972 P.2d 475 (1999). If there is nothing more tangible than two or more conjectural theories, each asserting opposite ends of liability, a jury will not be permitted to conjecture how the event occurred. *Marshall*, 94 Wn. App. at 379.

The non-moving party must be given the benefit of every favorable inference which reasonably may be drawn from the evidence. *See Grove*, 182 Wn.2d at 143. "'[T]he reviewing

court will not substitute its judgment for that of the jury, so long as there was evidence which, if believed, would support the verdict rendered.'" *Grove*, 182 Wn.2d at 143 n.8 (emphasis omitted) (quoting *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 107-08, 864 P.2d 937 (1994)).

Negligence is the failure to exercise ordinary care. *Mathis v. Ammons*, 84 Wn. App. 411, 416, 928 P.2d 431 (1996). It is the doing of some act that a reasonably prudent person would not do, or the failure to do some act that a reasonably prudent person would do, under the same or similar circumstances. *Mathis*, 84 Wn. App. at 416.

## II. ANALYSIS

The sole question considered by the jury was whether the Colorados's or Cedar Court's negligence proximately caused the fire. Viewing the evidence in the light most favorable to the Colorados, the evidence shows that the Colorados were out of the apartment at the time of the fire, and that the fire was likely caused by a type of paper product that was placed on top of the stove and produced a fire in a short amount of time after Gustavo last checked the apartment at 4:00 p.m.

However, the jury did not hear any other evidence that someone else entered the Colorados's unit that day. The testimony confirmed only that Cedar Court had scheduled the Colorados's carpet to be cleaned at their request. As of 4:00 p.m. when Gustavo last checked his apartment, the carpet had not been cleaned because Gustavo went to find the Cleaners employee to ask him to clean the carpet in his apartment, and the employee responded that he had another apartment to clean first. The fire was reported thirty minutes later, after the Colorados left to go to the library. Wheat verified that when the fire broke out, the Cleaners had the master key to the Colorados's front door and the Cleaners were at another apartment when Wheat retrieved the key at the firefighters' request.

As to the stove repair request, although Wheat testified inconsistently that Alex was and was not assigned to repair the stove that day, she also testified that it was not possible for Alex to enter the Colorados's apartment because he did not have the master key at the time the fire started. There is no evidence to the contrary.

Viewing the evidence in a light most favorable to the Colorados, as the nonmoving party on Cedar Court's CR 50 motion, there was no proof as to what was on or near the stove to start the fire, or how long the stove was on before the fire started. Neither party proved how the stove turned on, which was material because the Colorados's prior complaints related to the stove not turning on at all. The circumstantial evidence argued by the Colorados that someone else, either Alex or the Cleaners, entered the apartment and started the fire, was speculative. And a jury's verdict cannot be based on speculation. *Ayers*, 117 Wn.2d at 753. We agree with the trial court that there is neither substantial evidence nor a reasonable inference from the evidence to sustain the jury verdict that Cedar Court's negligence caused the fire. Thus, we affirm the trial court's order setting aside the jury's verdict.

## ATTORNEY FEES

Both parties request attorney fees and costs as the prevailing party on appeal under paragraph eight of the lease and under RCW 4.84.330. Because we affirm the trial court's order, we deny both parties' request for an award of attorney fees on appeal.

The lease states as follows,

11

No. 47778-5-II

8. DEFAULT/ATTORNEY FEES:  In the event Resident fails to comply with any of the terms of this Rental Contract, the Resident shall be in default.  If Resident is in default, this Rental Contract shall terminate and upon such termination Resident shall quit and surrender the premises, but shall remain liable for the performance of all obligations and conditions contained in this Rental Contract.  Resident agrees to pay all expenses and attorney's fees expended or incurred by the property owner and/or his/her agent by any reason of any default or breach by Resident(s) of any terms of this Rental Contract.  The venue for any suit pertaining to any claims arising out this Rental Contract, including any suit pertaining to the collection of any sums owed pursuant to this Agreement, shall be Pierce County Washington.

CP at 103.

RCW 4.84.330 provides that

[i]n any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

Attorneys' fees provided for by this section shall not be subject to waiver by the parties to any contract or lease which is entered into after September 21, 1977.  Any provision in any such contract or lease which provides for a waiver of attorneys' fees is void.

As used in this section "prevailing party" means the party in whose favor final judgment is rendered.

RCW 4.84.330.

Cedar Court is not entitled to attorney fees under the lease because the evidence did not prove that the Colorados were in default, and the issue tried to the jury was based on a negligence claim, not based on the Colorados's default on the lease.  The Colorados are not entitled to attorney fees under

12

the lease as they are not the prevailing party on appeal.[5]  For similar reasons, neither party is entitled

to attorney fees under RCW 4.84.330.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

LEE, J.

---

[5] Cedar Court asserts that if this court affirms the trial court, then Cedar Court should be awarded attorney fees as the prevailing party on appeal.  We agree with the trial court that neither party is the prevailing party.  *See* RCW 4.84.330; *see also* RAP 14.2.