IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VIRGINIA MEHLERT, a single woman,<br><br>Appellant,<br><br>v.<br><br>BASEBALL OF SEATTLE, INC., a duly licensed Washington corporation d.b.a. MARINERS BASEBALL, LLC, a duly licensed Washington limited liability corporation d.b.a. THE BASEBALL CLUB OF SEATTLE, LLLP, a duly licensed Washington limited liability limited partnership d.b.a. THE MARINERS TEAM STORE; TIMES SQUARE BUILDING FIFTH AVENUE, INC., a duly licensed Washington corporation d.b.a. TIMES SQUARE BUILDING, LLC, a duly licensed Washington limited liability corporation,<br><br>Respondents. | No. 75839-0-I<br><br>DIVISION ONE<br><br><br><br>PUBLISHED OPINION<br><br>FILED: October 30, 2017 |

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 OCT 30 AM 10: 00

BECKER, J. — Plaintiff took a fall when leaving a store and landed at the bottom of a set of stairs. Although she cannot remember what caused her to lose her footing, expert testimony creates a genuine issue of fact as to whether the absence of required handrails was a proximate cause of her injuries. The order dismissing her suit on summary judgment is reversed.

Viewed in favor of plaintiff Virginia Mehlert, the nonmoving party, the record establishes the following facts. Mehlert visited the Mariners Team Store in downtown Seattle on March 22, 2012. At the time, the front of the store was configured as shown in the photograph below.[1] Three concrete steps led up from the sidewalk to a landing; the landing connected to a carpeted vestibule; the vestibule led to the door. The top stair was 76 inches wide. A 37-inch wide plywood ramp was placed over the stairs to make the store accessible by wheelchair. On each side of the ramp was a raised edge strip, measuring 1 inch in width and 2 inches in height. There were no handrails adjacent to the ramp or the stairs.



Mehlert remembers that when she left to go to another store, she pushed the door open and turned to say goodbye to a store employee. "I took one or two

---

[1] The "sale" sign most likely was not there on the day of Mehlert's visit.

steps is about all I took, and then I had a sensation of falling." Mehlert lost consciousness as a result of hitting her head as she fell. Mehlert recalls that she fell to her left and the next thing she remembers is talking to a paramedic. She was found on the sidewalk to the left of the stairs, bleeding from a cut over her eye. She suffers from the effects of a head injury.

Mehlert sued the tenant and landlord of the store for failure to maintain safe premises. The defendants successfully moved for summary judgment on the basis that Mehlert lacked proof of causation. Mehlert appeals.

We review summary judgment orders de novo, engaging in the same inquiry as the trial court. Mahoney v. Shinpoch, 107 Wn.2d 679, 683, 732 P.2d 510 (1987). Summary judgment is proper when, viewing the evidence and available inferences in favor of the nonmoving party, there are no genuine issues of material fact. CR 56(c). The moving party has the initial burden of demonstrating there are no factual issues. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The burden then shifts to the plaintiff, who must set forth specific facts rebutting the moving party's contentions and disclosing issues of material fact. Young, 112 Wn.2d at 225. The plaintiff may not rely on speculation or argumentative assertions. Marshall v. Bally's Pacwest, Inc., 94 Wn. App. 372, 377, 972 P.2d 475 (1999).

In a negligence case, the plaintiff must produce evidence supporting four elements: duty, breach, causation, and damages. Little v. Countrywood Homes, Inc., 132 Wn. App. 777, 780, 133 P.3d 944, review denied, 158 Wn.2d 1017 (2006). Defendants acknowledge that they owed Mehlert a duty to protect her

from dangerous conditions on the property, and they concede for purposes of summary judgment that the ramp created a dangerous condition. They accept the conclusion of engineer William K. Skelton that the ramp was noncompliant with a building code requirement for handrails on both sides. The parties agree that the sole issue for our consideration is whether the lack of handrails was a cause of Mehlert's injuries.

"A proximate cause is one that in natural and continuous sequence, unbroken by an independent cause, produces the injury complained of and without which the ultimate injury would not have occurred." Attwood v. Albertson's Food Ctrs., Inc., 92 Wn. App. 326, 330, 966 P.2d 351 (1998). There may be more than one proximate cause of an injury. Smith v. Acme Paving Co., 16 Wn. App. 389, 396, 558 P.2d 811 (1976). Direct evidence or precise knowledge of how an accident occurred is not required; circumstantial evidence is sufficient. Conrad v. Alderwood Manor, 119 Wn. App. 275, 281, 78 P.3d 177 (2003); Klossner v. San Juan County, 21 Wn. App. 689, 692, 586 P.2d 899 (1978), aff'd, 93 Wn.2d 42, 605 P.2d 330 (1980). See also Raybell v. State, 6 Wn. App. 795, 803, 496 P.2d 559 (circumstantial evidence was sufficient to prove that if a proper guardrail had been installed along a narrow highway, decedent's car would have been deflected instead of plunging over a cliff), review denied, 81 Wn.2d 1003 (1972). The inquiry is whether a reasonable person could conclude that there is a greater probability that the conduct in question was the proximate cause of the plaintiff's injury than there is that it was not. Hernandez v. W. Farmers Ass'n, 76 Wn.2d 422, 425-26, 456 P.2d 1020 (1969).

Causation is usually a jury question. Little, 132 Wn. App. at 780. It becomes a question of law for the court only when the causal connection is so speculative and indirect that reasonable minds could not differ. Moore v. Hagge, 158 Wn. App. 137, 148, 241 P.3d 787 (2010), review denied, 171 Wn.2d 1004 (2011); Marshall, 94 Wn. App. at 378.

There were no witnesses to the fall except for Mehlert herself, and Mehlert does not remember what caused her to fall. She does not know whether she was on the stairs, ramp, or somewhere else when she began falling, and she does not know what she hit her head on. She testified that she was "headed in the direction of down the stairs or down the ramp" when she began falling. She "wanted something to grab, but there was nothing to grab." When asked whether she recalled "reaching for something," Mehlert responded, "I remember wanting to because I was falling."

To prove causation, Mehlert relies on the declaration of Dr. Erin Harley, a human factors specialist with a doctorate in cognitive psychology. Harley opined that Mehlert was most likely at the top of the stairs when she fell because her stride length (the distance traveled in two consecutive steps) was approximately 59 inches, while the distance from the door to the concrete of the landing was approximately 60 inches. Harley explained that the placement of the ramp over the middle of the stairs effectively divided the stairs into two impermissibly narrow stairways, one on each side of the ramp, each approximately 19 ½ inches wide at the top. Citing a study, she stated that 29 inches is the minimum safe stair width for a single file stair in a public place, especially considering that an

individual descending a stair typically maintains an approximate distance of 6 inches from a wall. "The narrow width of the stairways constrained the path of egress from the building, and increased the likelihood that a pedestrian would inadvertently contact the raised edges of the ramp, and potentially suffer a trip-and-fall event, when attempting to descend one of the staircases." She added that Mehlert's description of suddenly falling forward and the injuries she sustained in the fall were "consistent with the kinematics of a fall resulting from a trip."

Respondents contend that because Mehlert cannot remember why or where she fell, it cannot be assumed that she came into contact with the ramp. But Mehlert's theory of causation does not require proof that she tripped on the ramp or was on the ramp when she fell, and it does not require an explanation of how or why she fell. Her theory of causation rests on Harley's opinion that the absence of handrails "presented a safety hazard and was a contributing factor" in her fall. Code required handrails on each side of the two narrow staircases as well as on the ramp. Without handrails, any path from the store to the sidewalk was unsafe. According to Harley, if appropriate handrails had been present, Mehlert would have been able to reach out to grasp one, thereby lessening or preventing her injuries.

Harley presented research about the effectiveness of handrails in preventing falls. She discussed studies showing that in moments of destabilization, individuals are almost always able to reach out and successfully grab a handrail.

> For example, Maki et al. (1998) found that during a perturbation in balance, the absence of a handrail increased the rate of falls from 8% to 54%, and that when the handrail was present, there was not a single instance in which an individual was unable to establish a grip on the handrail, even when the hand was distant from the handrail when the loss of balance occurred. Similarly, during a loss of balance, Cheng et al. (2012) found that individuals were able to reach out and successfully grasp the handrail over 99% of the time, and that all were able to recover their balance by doing so.

Harley also explained that the effectiveness of handrail use in being able to arrest or retard a fall "is not dependent on the need to look directly at the handrail."

> For instance, successful grasping of the handrail has been found to be relatively high (greater than 90%) regardless of whether individuals use central or peripheral vision to perceive the handrail (King et al., 2010). This is consistent with other studies that have shown that eye movements directed toward the handrail are not necessary for successful grasping of the handrail to recover balance during falls (e.g., King et al., 2011), and the ability to do so persists even when vision is partially occluded (Ghafouri et al., 2004; Cheng et al., 2012). In addition to the efficacy of handrails to enable pedestrians to arrest a fall, scientific studies have also found that use of handrails, prior to any loss of balance, can facilitate the stabilization of posture, even when the handrail is only lightly touched (Holden et al., 1994).

In cases cited by respondents where plaintiff could not remember how the accident occurred, summary judgment dismissal was appropriate because the evidence allowed no more than speculation or theory that the defendant's conduct was a cause of the plaintiff's injuries. Marshall, 94 Wn. App. at 379; Little, 132 Wn. App. at 781; Moore, 158 Wn. App. at 140. Here, in contrast, Harley's testimony together with the rest of the evidence would allow reasonable jurors to infer causation without speculating. Mehlert has submitted proof that

the placement of the ramp without handrails was a but-for cause of her injuries notwithstanding her inability to recall how or why she fell.

Reversed.

WE CONCUR:

Becker, J.

Trickey, ACJ

Leach, J.