IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| BARBARA ARNTZ, an individual, | ) | No. 77504-9-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CITY OF SEATTLE, a municipal corporation, | ) | |
| | ) | |
| Respondent. | ) | FILED: February 25, 2019 |

SCHINDLER, J. — Barbara Arntz appeals summary judgment dismissal of her personal injury lawsuit against the city of Seattle. We affirm.

## FACTS

On August 28, 2014, German citizen Barbara Arntz and her friend Manfred Tappe walked to Pike Place Market. As Arntz was walking across the intersection at First Avenue and Pine Street, she tripped and fell in the crosswalk near the curb.

On April 17, 2015, Arntz submitted a claim to the city of Seattle (City). Arntz stated that she sustained multiple fractures to her upper right arm after tripping on a manhole cover in the crosswalk.

On May 27, 2016, Arntz filed a personal injury lawsuit against the City. Arntz alleged she tripped over a "sunken" manhole cover.

The City filed a motion for summary judgment. The City argued Arntz failed to establish the manhole cover caused her fall. The City submitted portions of Arntz's deposition testimony and the declaration of City senior risk analyst Matthew Garcia in support of the motion for summary judgment.[1]

When asked to describe in detail how she fell, Arntz testified, "I only noticed suddenly I was on the ground. . . . At that point I did not yet know what had actually happened exactly." In response to asking how she was able to determine what caused her to fall, Arntz explained that "[a]fter I was on my legs again I looked back in order to see what had caused me to trip." Arntz testified she "only saw the sewer lid that had these hooks,[2] and then I understood that that is what I must have tripped over."

When asked whether she felt her foot "catch on anything or contact something hard," Arntz said she did not "remember feeling [her] foot strike the edge of the manhole cover rim." Arntz testified, "[I]t went so fast, I only remember I fell frontally forward onto my knees. And I then had to reorient myself in order to figure out what was going on, what had been going on."

Arntz marked a photograph of the manhole cover to show what caused her to fall. Arntz circled the rim and handle on the eastern edge of the manhole cover. When asked how she knew which part of the manhole cover she tripped on, Arntz testified:

> When I fell there were lots of people around me and I was not able to see what I tripped over. But when I was then standing again and I looked back to see what I had tripped over, I saw that the lid was incorrectly placed at that point, that it was higher, and I therefore assumed that that was what I had tripped over. Also there were these rubbing markings on my sneaker.

---

[1] A certified German interpreter translated Arntz's testimony at the deposition.

[2] Arntz later explained that by "hooks," she was referring to the handles in the manhole cover used to lift the lid.

2

Arntz reiterated that she "assumed" that was "the edge where I got stuck." When asked whether she felt her foot "get stuck on something" at the time she tripped, Arntz responded, "I noticed that I fell, and why I was falling was something I did not realize at that moment because it went so fast. I only noticed that I was falling forward and that something was happening."

Arntz testified the manhole cover and the ring on the manhole cover were "higher than the pavement."

> Q. So is it your understanding that your left toe planted into the lower part of the manhole cover and that your heel remained on the pavement itself at the time that you fell?
> A. No, I'm saying that I got stuck behind the edge of the lid because it was not as low as the street, it was higher, and I got stuck behind it.
> Q. So that helps. I think I want to understand the part that was uneven.
> Is it your testimony that the pavement in the street was at a lower level then the rim of the manhole cover as you see it in Exhibit 4?
> A. Yes.
> Q. Okay. Was the cover itself marked with the word ["]water["] also at a lower level than the circular rim that goes around it?
> A. I am not a technician. I just know that the edge here was not flush with the street.
> Q. So the metal ring around the cover that we see in Exhibit No. 4, it's your testimony that the metal ring was higher or raised above the pavement that surrounded it. Is that right?
> A. Yes.
> Q. And because it was raised higher than the pavement, you believe that your toe connected with the metal ring, the outside of that metal ring, which caused you to fall?
> A. I assume that was the case.
> Q. And to be clear, when you say you assumed that that was the case, how are you able to come to that determination if you don't remember actually feeling or seeing your foot connect to something when you tripped and fell?
> A. Well, there are two possibilities. It's one either of the two and I don't know which one it was either.
> Either I tripped over the ring or I tripped over the hook, the handle. In that case I would have stepped on the ring and tripped over the handle. I don't know.

Q. And you don't know which of the two of those it was that caused you to fall?
A. No.

Arntz testified she was able to "rule out any other possible causes" of her fall "[b]ecause there was nothing else there over which I might have tripped." Arntz acknowledged it was possible that she tripped on another pedestrian walking across the crowded crosswalk but denied ever tripping and falling "just by catching" her foot on the ground.

City analyst Garcia testified he "carefully" inspected the manhole cover and the two possible causes of the fall that Arntz identified in her deposition. Garcia found "no vertical discontinuities" or "irregularity" of the handle and the seam where the metal ring meets the surrounding pavement.

The City also submitted excerpts of the deposition of Arntz's expert witness, civil engineer Edward Stevens. Stevens agreed that neither the level of the manhole ring compared to the level of the surrounding pavement nor the manhole handles "constitutes a trip hazard." Stevens admitted he "couldn't say" what part of the manhole cover Arntz tripped on because "I'm not sure that she knows."

Arntz argued in opposition to summary judgment that there was sufficient circumstantial evidence for a jury to conclude that the manhole cover more likely than not caused her fall. Arntz submitted her declaration, a report prepared by Stevens' engineering firm, a declaration from Stevens, and excerpts of his deposition testimony.

Stevens reviewed the report and adopted the conclusions in the engineering report. The report states manhole covers "are manufactured to be flush with the ring" and the surrounding pavement. The report states the manhole cover lid appeared to be

mismatched with the ring, leaving a difference in height of approximately 7/8 of an inch.[3] The report concludes the manhole cover "does not meet the standard of care for installation and maintenance of manhole covers in walking areas" and Arntz's fall was a "predictable consequence of an inset lid in a crosswalk."[4] Stevens states the City most likely replaced the original manhole cover with another cover that violated current industry standards, creating a trip hazard.

Contrary to her deposition testimony, Arntz states in her declaration that "[a]fter I stood up following my fall, I looked back to see what caused my fall and noticed the manhole cover sitting <u>below</u> the ring."[5] Arntz said she thought the "cover and the ring created a large lip over which I most likely tripped." Arntz admits she did "not know exactly" what part of the manhole caused her to trip. But Arntz states the "western side" of the manhole created "the most likely tripping hazard given" the direction she was walking and the fact that her shoulder struck the curb. Arntz stated she "was walking carefully, not in a hurry, and no other trip hazards existed" that would have caused her to trip and strike the curb.

In his declaration, Tappe said he was walking in front of Arntz and "did not see her trip." But after Arntz tripped, Tappe looked back and saw the manhole cover was "not flush with the pavement" or "with the ring in which it sat." Tappe did not see any other "trip hazards" and believed the "most likely explanation" for Arntz's fall was that

---

[3] An engineer at Stevens' firm submitted a declaration confirming the measurement was correct.

[4] The report referenced (1) the 2011 City "Standard Specifications for Road, Bridge, and Municipal Construction"; (2) "various years" of the Washington State Department of Transportation and American Public Works Association "Standard Plans for Road, Bridge, and Municipal Construction"; (3) the 2010 Washington State Department of Transportation "Construction Manual"; (4) the 2008 City "Standard Plans for Municipal Construction"; and (5) the 2010 Department of Justice Americans with Disabilities Act "Standards for Accessible Design."

[5] Emphasis added.

the "ring on the western side of the . . . manhole cover was raised above the actual cover," creating a "lip" that caused her to trip.

Arntz argued the report and Stevens' expert testimony conclusively established that the recessed manhole cover violated several safety standards. Arntz asserted that even though she is not sure what exact part of the manhole cover caused her to trip, because there is nothing else that could have caused the fall, she is certain the manhole cover caused her fall.

The City objected to consideration of the testimony in Arntz's declaration that was inconsistent with her deposition testimony. But even if the court decided to consider the new declaration, the City argued Arntz did not establish what caused her fall. The court considered the declaration, granted the motion for summary judgment, and dismissed the lawsuit.

## ANALYSIS

Arntz contends the court erred in dismissing her personal injury lawsuit against the City on summary judgment. Arntz asserts there are genuine issues of material fact as to causation.

We review summary judgment de novo. Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). This court engages in the same inquiry as the trial court, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. Owen v. Burlington N. Santa Fe R.R., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). The defendant on summary judgment has the burden of showing the absence of evidence to

6

support the plaintiff's case. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). When the moving party shows an absence of a genuine issue of material fact, the burden shifts to the nonmoving party. Young, 112 Wn.2d at 225.

While we construe the evidence and reasonable inferences in the light most favorable to the nonmoving party, if the nonmoving party " 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' " summary judgment is proper. Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300-01, 45 P.3d 1068 (2002). "[M]ere allegations, denials, opinions, or conclusory statements" do not establish a genuine issue of material fact. Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 744, 87 P.3d 774 (2004). Questions of fact may be determined as a matter of law " 'when reasonable minds could reach but one conclusion.' " Owen, 153 Wn.2d at 788 (quoting Hartley, 103 Wn.2d at 775).

"The mere occurrence of an accident and an injury does not necessarily lead to an inference of negligence." Marshall v. Bally's Pacwest, Inc., 94 Wn. App. 372, 377, 972 P.2d 475 (1999). To prove negligence, the plaintiff must establish (1) a duty owed to the complaining party, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. Jackson v. City of Seattle, 158 Wn. App. 647, 651, 244 P.3d 425 (2010). Although circumstantial evidence is sufficient to prove negligence, " '[t]he facts relied upon to establish a theory by circumstantial evidence must be of such a nature and so related to each other that it is the only conclusion that fairly or reasonably can be drawn from them.' " Boguch v. Landover Corp., 153 Wn. App. 595, 610-11, 224 P.3d 795

(2009)[6] (quoting Grobe v. Valley Garbage Serv., Inc., 87 Wn.2d 217, 225-26, 551 P.2d 748 (1976)). "The nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain." Little v. Countrywood Homes, Inc., 132 Wn. App. 777, 780, 133 P.3d 944 (2006) (citing Marshall, 94 Wn. App. at 377). A cause of action may be speculative when in consideration of all of the facts, it is as likely that it happened from one cause as another. Rasmussen v. Bendotti, 107 Wn. App. 947, 959, 29 P.3d 56 (2001).

Arntz contends Stevens' declaration and her testimony establish the manhole cover more probably than not caused her to trip and fall. Stevens testified the recessed manhole cover violated industry standards and presented a trip hazard. Arntz identified the manhole cover as the cause of her fall.

Neither Arntz's speculation about how she fell nor Stevens' declaration creates a material issue of fact. Stevens' declaration and report establishes the recessed manhole cover violated safety standards. The report assumes Arntz "tripped and fell because of a manhole cover that was sunken below the manhole ring." Stevens asserts but does not state the recessed manhole cover caused Arntz to fall.

Arntz's theory of causation relies on the recessed lid of the manhole cover. But the evidence does not establish that her foot actually made contact with the recessed lid or any other part of the manhole cover. Her opinion that her foot contacted the manhole cover is based solely on her own assumptions. In her deposition, Arntz unequivocally testified that she did not feel her foot "strike the edge of the manhole cover rim" or "catch on anything or contact something hard." Arntz testified she did not "know what

_____

[6] Alteration in original; internal quotation marks omitted.

8

had actually happened" and "looked back in order to see what had caused me to trip." Arntz testified she "assumed" it must have been the manhole cover. Arntz unequivocally testified in her deposition that she believed there were only two possible causes for her fall—she had tripped over the handle on the eastern side of the manhole cover or she got her foot stuck behind the ring because it was higher than the surrounding pavement. But Stevens concedes these parts of the manhole cover did not violate industry standards.

In an apparent effort to reconcile her testimony with Stevens' opinion, Arntz stated in her declaration in opposition to summary judgment that the manhole cover was lower than the ring, forming a large lip over which she most likely tripped. A self-serving declaration that contradicts earlier deposition testimony does not create a question of fact for trial.[7]

> "When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."

Overton v. Consol. Ins. Co., 145 Wn.2d 417, 430, 38 P.3d 322 (2002)[8] (quoting Marshall v. AC&S, Inc., 56 Wn. App. 181, 185, 782 P.2d 1107 (1989)).

To survive summary judgment, Arntz must establish "specific and material facts" tending to show that it is more probable than not that the defective manhole cover caused her fall. Hiatt v. Walker Chevrolet Co., 120 Wn.2d 57, 66, 837 P.2d 618 (1992).[9] "When there could be more than one cause of an injury, the testimony, whether direct or circumstantial, must reasonably exclude every hypothesis other than

---

[7] Even in her later declaration, Arntz acknowledged she did not actually know how she tripped.

[8] Alteration in original; internal quotation marks omitted.

[9] Emphasis in original.

the one relied on." Conrad v. Alderwood Manor, 119 Wn. App. 275, 285, 78 P.3d 177 (2003). Because Arntz cannot establish that her foot contacted the manhole cover prior to falling, she cannot show the recessed manhole cover more probably than not caused her to trip and fall.

Little is analogous. In Little, the plaintiff was severely injured while installing gutters on a home. Little, 132 Wn. App. at 778. A coworker found the plaintiff on the ground, disoriented and trying to stand up. Little, 132 Wn. App. at 778. The plaintiff's ladder was lying on the ground. Little, 132 Wn. App. at 778. There were no witnesses and the plaintiff did not know what had happened. Little, 132 Wn. App. at 778. The plaintiff's expert concluded the employer committed numerous safety violations. Little, 132 Wn. App. at 781. The plaintiff alleged he established that the employer's negligence was a substantial contributing cause of his accident. Little, 132 Wn. App. at 782. We affirmed summary judgment dismissal because the plaintiff "did not provide evidence showing more probably than not that one of those breaches caused his injuries." Little, 132 Wn. App. at 784, 782.

Arntz's reliance on Mehlert v. Baseball of Seattle, Inc., 1 Wn. App. 2d 115, 404 P.3d 97 (2017), is unpersuasive. In Mehlert, the plaintiff fell and landed at the bottom of a set of stairs while leaving a store. Mehlert, 1 Wn. App. 2d at 116-17. There were no witnesses and the plaintiff did not remember what caused her to fall. Mehlert, 1 Wn. App. 2d at 119. But the plaintiff did remember there was " 'nothing to grab' " onto as she fell. Mehlert, 1 Wn. App. 2d at 119. To prove causation, the plaintiff relied on the declaration of a human factors specialist. Mehlert, 1 Wn. App. 2d at 119. The expert testified that if handrails had been present, the plaintiff would have been able to reach

out and grab a handrail, lessening or preventing her injuries. <u>Mehlert</u>, 1 Wn. App. 2d at 120. We concluded the expert's testimony would allow a jury to infer causation without speculating. <u>Mehlert</u>, 1 Wn. App. 2d at 121. The plaintiff's theory of causation relied on the expert's conclusion that the absence of handrails " 'presented a safety hazard and was a contributing factor' " in her fall. <u>Mehlert</u>, 1 Wn. App. 2d at 120. The plaintiff's theory of causation did not "require an explanation of how or why she fell." <u>Mehlert</u>, 1 Wn. App. 2d at 120.

Stevens concluded the recessed lid violated industry standards and created a trip hazard. But unlike in <u>Mehlert</u>, Stevens does not state the recessed lid caused Arntz to fall. When asked what part of the manhole cover Arntz tripped on, Stevens admitted he "couldn't say" because "I'm not sure that she knows." Arntz may not rely on speculation to show causation to defeat a motion for summary judgment.

We affirm summary judgment dismissal of the personal injury lawsuit.

WE CONCUR: