OCEAN ACC. & GUARANTEE CORP., Ltd., v. DENNER.

No. 34860. Nov. 12, 1952.

*250 P. 2d 217.*

Houts & Houts, Alva, for plaintiff in error.

C. E. Wilhite, Alva, for defendant in error.

HALLEY, V.C.J. The Ocean Accident & Guarantee Corporation, Ltd., sued Joe Denner, d/b/a Golden Krust Bakery, in the district court of Woods county to recover $1,364.46 alleged to be the balance due by defendant for merchandise purchased and received by him from Wilson & Company at its Alva, Oklahoma, branch between April 1, 1945, and May 10, 1946, in the total sum of $2,107.99. The above balance was assigned by Wilson & Company to the plaintiff after Wilson & Company had been paid in full by the plaintiff under a contract of indemnity whereby the plaintiff had insured Wilson & Company against loss by default of its own agents and employees.

· The· defendant answered by general denial and alleged that he had paid his account to Wilson & Company in full. The court heard the evidence of defendant and plaintiff demurred thereto. The court overruled the demurrer and, plaintiff electing to stand thereon, judgment was rendered for the defendant. Plaintiff has appealed. The parties will be referred to as they appeared in the trial court.

The facts from which this action arose are not disputed. The defendant had been in business at Alva for more than 20 years, and for more than 15 years had made purchases from Wilson & Company through its Oklahoma City office. That company requested that he transfer his account to its Alva branch in order to effect a saving and obtain better service. The Alva branch office was under the district office at Wichita, Kansas. This suggestion was agreed to by defendant. Thereafter, when defendant needed merchandise, he would call the Alva ·branch office of Wilson & Company and the goods would be delivered to his bakery. He drew checks in payment therefor payable to Wilson & Company. A Mr. Lohr was manager of the Wilson & Company branch at Alva. Of the nine checks given by defendant, payable to Wilson & Company, one was endorsed by Lohr and the others by "Wilson & Company, by Ida Peterson." Ida Peterson was the secretary to Mr. Lohr and also bookkeeper for the branch office. The checks were cashed at the Alva bank upon which drawn and were charged to defendant's account.

The evidence shows that Mr. Lohr defaulted in applying the proceeds of these checks to the extent of $1,363.46 and departed from Alva "between sunset and sunup." Thereafter, the defendant was requested to deliver to the auditors of Wilson & Company, for examination, his canceled checks. This was shortly after the last check was given in May, 1946. The defendant was given no notice that the proceeds of his checks had not all been applied to the payment of his account. No demand was made for any additional payment. The defendant had no notice whatever that he would be expected to pay a second time until three or four months before this action was filed in 1949, when the attorney for plaintiff advised him that he would be sued for the above mentioned balance. This was over three years after he had given the last check.

There is no denial that defendant had drawn and delivered checks to the employees of the Wilson & Company branch at Alva to cover all he owed the company, and there is no question that these checks were endorsed and cashed by employees of that office. Neither is it denied that defendant had no notice of the claimed lack of authority on the part of such employees to endorse and cash the checks.

Plaintiff in error has submitted its assignments of error under the following proposition:

"The court erred in point of law by holding that the evidence introduced in behalf of defendant was sufficient to show that his liability on the account had been satisfied."

In the stipulation of the parties, they agreed that defendant had between April 1, 1945, and May 10, 1946, received merchandise from Wilson & Company in the value of $2,107.99; that photostatic copies of the nine checks involved might be offered in lieu of the original instruments; that part of the proceeds of two checks given by defendant had been deposited to the credit of Wilson & Company in the bank at Alva, leaving a balance due in the sum sued for herein; that plaintiff now owns the right of action accruing to Wilson & Company as above stated.

Plaintiff attached to its petition an assignment from Wilson & Company to plaintiff, and therein is a complete description of the nine checks given by defendant to Wilson & Company; however, the plaintiff calls attention to the fact that the photostatic copies of these checks were not offered in evidence and

that the evidence also failed to show that Wilson & Company, the payee on the checks, had clothed its' employees with authority to endorse its name on such checks. Plaintiff relies principally upon the case of Bell-Wayland Co. v. Bank of Sugden, 95 Okla. 67, 218 P. 705, as authority. That case held that an agent vested with authority to sell merchandise and collect therefor has no authority to endorse checks payable to the order of the employer, and that, such endorsement not being necessarily incident to the duties of the agent given authority to sell goods and collect therefor, authority may not be inferred.

The proof was clear that for over a year the name of Wilson & Company was endorsed upon checks given by defendant, by the manager and bookkeeper of Wilson & Company's Alva branch. There is no proof that such endorsements were questioned by Wilson & Company at any time. The court took the view that Wilson & Company must have had notice that the checks were being so endorsed, but no complaint was made. Wilson & Company, being a corporation, must necessarily transact its business by and through its agents and employees. Plaintiff quotes from the opinion in Bell-Wayland Co. v. Bank of Sugden, supra, as follows:

"It is a general rule applying to all cases of implied agencies that no authority will be implied from an express authority, unless it is positively needful for the performance of the main duties contemplated by the express authority, and this rule is more strictly enforced in connection with the negotiation of commercial paper than in any other transaction. So, in order that the authority to endorse commercial paper as the agent of another may be implied from some other express authority, it must be shown to be necessary to the complete execution of the express power, and unless it is shown to be absolutely necessary to the exercise of such express authority the authority to indorse commercial paper will not be implied."

In that case, Bell-Wayland Company sued the Bank of Sugden and S. D. Laughlin to recover on eleven checks made payable to Bell-Wayland Company and endorsed and cashed by Laughlin at the defendant bank. Laughlin was a traveling salesman, authorized to sell goods and collect accounts. The plaintiff alleged that such endorsements by Laughlin were without authority, fraudulent and void, and that Laughlin had failed to account to his employer for the proceeds of the checks.

The defendant bank admitted payment of the checks to Laughlin on his endorsement of plaintiff's name thereon, and pleaded that Laughlin was the agent of Bell-Wayland Company, authorized to accept checks from customers and reduce them to cash; that Bell-Wayland Company held out to the bank and to the business world generally that Laughlin was its agent, with authority to sell goods and collect accounts, and that after Laughlin had cashed the checks Bell-Wayland had, in 1918, ratified his acts. Laughlin also pleaded ratification of his acts by Bell-Wayland Company.

The evidence of plaintiff showed that Laughlin had authority to sell and collect but had no authority to endorse checks. The bank demurred to plaintiff's evidence. The demurrer was sustained and judgment entered for the bank, but in favor of the plaintiff as against Laughlin. Bell-Wayland Company appealed from the judgment in favor of the bank. This court held that the authority of Laughlin to sell goods and collect therefor did not carry with it implied authority to endorse the name of his principal to checks given in payment for goods sold by him. The court then announced the general rule relied upon by the plaintiff in the case now before us.

However, the court then considered whether or not the bank was liable even though Laughlin had no express

or implied authority to endorse checks with the name of his principal, and whether Bell-Wayland Company, by its conduct, had ratified the unauthorized acts of its agent. In this connection the court said:

"The checks in question were indorsed and collected by Laughlin in June and July, 1918; the plaintiff learned of this in September, 1918, at which time it obtained the paid checks from the drawers, and credited their respective accounts with the amounts thereof. The plaintiff did not then notify the bank of said unauthorized endorsement, and made no complaint whatever to it until these suits were filed on the 5th day of March, 1921, almost three years after the payment of said checks and after the plaintiff knew of the endorsement thereof by Laughlin, but during all this time, the plaintiff acquiesced in the endorsement of said checks by him.

"It is a rule of general application that the acts of the principal are to be liberally construed in favor of an adoption of the acts of his agent, and when the unauthorized acts of an agent are capable of ratification, evidence of acts or conduct of the principal in apparent approval of such act suffices, in the absence of evidence to the contrary, to raise a presumption of ratification. Thus, where with knowledge of the unauthorized acts of the agent there is a silence or acquiescence for an unreasonable time, without objection on the part of the principal, he will be presumed to have ratified such unauthorized acts."

In Walker Valley Oil & Gas Co. v. Parks & Palmer, 128 Okla. 286, 262 P. 672, this court announced the rule in the second syllabus as follows:

"In addition to the express authority granted an agent, there exists certain authority implied from the existence of the express authority to do a particular act or thing, and this authority will be implied when it appears that the thing done or transaction made was necessary and essential in order to promote the duty or carry out the purpose expressly delegated to him. Furthermore, whenever a principal has placed his agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of his principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it."

The court further said in the body of that opinion:

"If a person imposes upon another the duties and responsibilities involving the management and control of a business, such person will be presumed to have authority to represent his employer in any matter within the scope of the business, and this rule applies peculiarly to corporations which act only through their officers and agents."

The defendant, Joe Denner, established by his evidence that at no time did Wilson & Company repudiate the method of payment followed by him in giving checks payable to Wilson & Company to the employees of that concern's Alva office; that he was never notified that such method was not satisfactory; and that Wilson & Company never complained or notified him that his checks were being endorsed by its employees without authority. He was never asked to pay directly to Wilson & Company and not to its agents. For more than 16 years he had followed the method of payment now complained of, and more than three years after the last check given by him, he was told for the first time that he would be held accountable for the checks he had given.

The agents of Wilson & Company were bound to have known the facts soon after their Alva manager departed, because they called upon Joe Denner to exhibit the canceled checks he had given in payment of his account. No complaint was made of his method of payment until shortly before this action was filed in 1949.

We conclude that the acts and conduct of Wilson & Company, as above

related, over a long period of time, were sufficient to justify and fully support the finding of the trial court in favor of the defendant. We think the defendant should not be required to pay again the account which he had paid in full to plaintiff's agent and employees. The method of payment he employed extended over a long period of time and was sufficient to justify him in the belief that the agents of Wilson & Company had authority to accept, endorse, and cash his checks in payment of his account.

In Ulen v. Knecttle, 50 Wyo. 94, 58 P. 2d 446, the Supreme Court of Wyoming stated in the tenth syllabus:

"Acquiescence by the principal in a series of acts by the agent indicates authorization to perform similar acts in the future."

The judgment of the trial court is affirmed.

WELCH, CORN, GIBSON, O'NEAL, and BINGAMAN, JJ., concur.