OSCN Found Document:IN RE AMENDMENTS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS - CIVIL

 

 
 

 
 IN RE AMENDMENTS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS - CIVIL
2020 OK 3
Decided: 01/13/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 3, __ P.3d __

 

IN RE: AMENDMENTS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS - CIVIL

ORDER ADOPTING AMENDMENTS AND NEW
OKLAHOMA UNIFORM CIVIL JURY INSTRUCTIONS

Â¶1 The Court has reviewed the recommendations of the Oklahoma Supreme Court Committee for Uniform Civil Jury Instructions to adopt recommended amendments to existing instructions and proposed new instructions. The Court finds that the amendments and new instructions should be adopted.

Â¶2 It is therefore ordered, adjudged, and decreed that the attached instructions shall be available for access via internet from the Court website at www.oscn.net. The Administrative Office of the Courts is directed to notify the Judges of the District Courts of the State of Oklahoma regarding our approval of the instructions set forth herein. Further, the District Courts of the State of Oklahoma are charged with the responsibility of implementing these instructions within thirty (30) days of this Order. Notwithstanding, the district courts may implement these instructions immediately for any currently pending actions in which the judge determines the instructions are applicable.

Â¶3 It is therefore ordered that the proposed amendments to OUJI-CIV Nos. 6.4, 6.7--6.9, 6.11--6.12, 6.14, 7.5--7.6, 9.51, 11.10, 11.12, 20.1, 24.1--24.3, and 25.2, as set out and attached to this Order, are hereby approved. Additionally, it is ordered that the newly created instructions set out in OUJI-CIV Nos. 1.12A, 1.13A, 3.11A, 20.1A, 24.4--24.5, and 33.1--33.3, as set out and attached to this Order, are hereby adopted.

Â¶4 The Court declines to relinquish its constitutional and statutory authority to review the legal correctness of the above-referenced instructions or when it is called upon to afford corrective relief in any adjudicative context.

Â¶5 The amended OUJI-CIV instructions shall be effective thirty (30) days following entry of this Order.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THE 13th DAY OF January, 2020

Â 

/S/CHIEF JUSTICE

Â¶6 Gurich, C.J., Darby, V.C.J., Kauger, Edmondson, Colbert, Combs, Kane, Rowe, JJ., concur;

Â¶7 Winchester, J., not voting.

Â 

Â 

Instruction No. 1.12A

Instruction No. 1.12A 

Directions for Verdict Form for One Plaintiff, One Defendant

If you find in favor of Plaintiff, [name], on the [specify] claim, then mark the [specify] Verdict Form for Plaintiff, [name], and against Defendant, [name]. If you so find, then determine the amount of damages that Plaintiff, [name], is entitled to recover and enter that amount on the [specify] Verdict Form.

If you find in favor of Defendant, [name], on the [specify] claim, then mark the [specify] Verdict Form for Defendant, [name], and against Plaintiff, [name].

Notes on Use

This Instruction should be given along with the Verdict Form in Instruction 1.12.

Instruction No. 1.13A

Instruction No. 1.13A 

Directions for Verdict Form for Counterclaim

If you find in favor of Defendant, [name], on the [specify] counterclaim, then mark the Verdict Form for the [Specify] Counterclaim for Defendant, [name], and against Plaintiff, [name]. If you so find, then determine the amount of damages that Defendant, [name], is entitled to recover and enter that amount on the Verdict Form for the [Specify] Counterclaim.

If you find in favor of Plaintiff, [name], on the [specify] counterclaim, then mark the Verdict Form for the [Specify] Counterclaim for Plaintiff, [name], and against Defendant, [name].

Notes on Use

This Instruction should be given along with the Verdict Form in Instruction 1.13.

Instruction No. 3.11A

Inference from Spoliation of Evidence

[Name of Party] had a duty to preserve [Specify Evidence] in this case and [Name of Party] [destroyed/hid/failed to preserve] the evidence. You may therefore conclude that the evidence would have been unfavorable to [Name of Party].

Notes on Use

This Instruction may be used if the court has imposed a sanction for spoliation of evidence. In order to give this Instruction, the trial court must first find that there was a duty to preserve the evidence in issue and that a party negligently or willfully destroyed, withheld, or failed to preserve the evidence. See Am. Honda Motor Co. v. Thygesen, 2018 OK 14, Â¶Â¶ 3--4, 416 P.3d 1059, 1060 (sanctions for spoliation were not authorized where there was no duty to preserve the evidence); Barnett v. Simmons, 2008 OK 100, Â¶ 27, 197 P.3d 12, 21 (trial court must determine whether party violated a duty to preserve evidence before imposing sanctions). This Instruction should be modified appropriately if the evidence was materially altered, instead of destroyed or withheld.

Committee Comments

Spoliation of evidence may result in the imposition of sanctions as well as an adverse inference at trial. See Barnett v. Simmons, 2008 OK 100, Â¶ 19, 197 P.3d 12, 19 ("This Court has also held that severe sanctions may be imposed for reasonably foreseeable destruction of evidence, even when there is no discovery order in place."); Harrill v. Penn, 1927 OK 492, Â¶ 8, 273 P. 235, 237 ("The willful destruction, suppression, alteration or fabrication of documentary evidence properly gives rise to the presumption that the documents, if produced, would be injurious to the one who has thus hindered the investigation of the facts."). An adverse inference instruction may appropriately be given because a reasonable inference may be drawn from spoliation of evidence that the evidence was unfavorable to the person who caused the spoliation, if the spoliation was willful. Alternatively, an adverse inference instruction may be imposed as a sanction. Except in extraordinary circumstances, sanctions may not be imposed for the loss of electronically stored information on account of the routine, good-faith operation of an electronic information system. 12 O.S. Supp. 2017 Â§ 3237(G); Am. Honda Motor Co. v. Thygesen, 2018 OK 14, Â¶ 2, 416 P.3d 1059, 1060.

Instruction No. 6.4

Instruction No. 6.4 

Employer and Employee --- Defined

An employee is a person who, by agreement with another called the employer, acts for the employer and is subject to [his/her/its] control. The agreement may be oral or written or implied from the conduct of the parties.

Comments

See Mistletoe Express Serv. v. Britt, 405 P.2d 4, 7 (Okla. 1965) (distinguishing an employee from an independent contractor). Bouziden v. Alfalfa Elec. Coop., Inc., 2000 OK 50, Â¶ 29, 16 P.3d 450, 459 ("The decisive test for determining whether one is an employee or an independent contractor is the right to control which the employer is entitled to exercise over the physical details of the work."); Keith v. Mid-Cont. Petroleum Co., 1954 OK 196, Â¶ 15, 272 P.2d 371, 377 ("[T]he decisive test for determining whether one party is a servant or an independent contractor is to ascertain whether the employer has the right to control or purports and attempts to control, the mode and manner of doing the work.").

Instruction No. 6.7

Instruction No. 6.7 

Scope of [Agency/Employment]

An [agent/employee] is acting within the scope of [his/her] [agency/employment] if [he/she] is engaged in the work which has been assigned to [him/her] by [his/her] [principal/employer], or is doing that which is proper, usual and necessary to accomplish the work assigned to [him/her] by [his/her] [principal/employer], or is doing that which is customary within the particular trade or business in which the [agent/employee] is engaged. [An [agent/employee] is acting within the scope of [agency/employment] if the [agent/employee] acted with a view to further the [principal's/employer's] business, or from some impulse or emotion which naturally grew out of or was related to an attempt to perform the [principal's/employer's] business, regardless of whether the [agent/employee] acted mistakenly or unwisely.]

Notes on Use

This instruction is to be used in cases in which the plaintiff is seeking to hold the defendant liable as an employer under the doctrine of respondeat superior. The last sentence should be included if there is evidence that the employee acted mistakenly or ill advisedly and was otherwise attempting to perform the employer's business. If there is evidence that the employee deviated from the employer's business for the employee's own purposes, the trial court should give Instruction No. 6.12 in addition to this instruction.

Comments

The Oklahoma Supreme Court summarized the theory of respondeat superior in Nail v. City of Henryetta, 1996 OK 12, Â¶ 11, 911 P.2d 914, 917, as follows: "Under the theory of respondeat superior, one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." Roring v. Hoggard, 1958 OK 130, Â¶ 0 (Syllabus by the Court), 326 P.2d 812, 815 (Okla. 1958); Brayton v. Carter, 1945 OK 289, Â¶ 5, 196 Okla. 125, 127, 163 P.2d 960, 962, 196 Okla. 125, 127 (1945); and Retail Merchs. Ass'n v. Peterman, 1940 OK 49, Â¶ 8, 186 Okla. 560, 561, 99 P.2d 130, 131, 186 Okla. 560, 561 (1940) . An employee's actions may be within the scope of employment if they are "'fairly and naturally incident to the business', and [are] done 'while the servant was engaged upon the master's business and [are] done, although mistakenly or ill advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business.'" Rodebush v. Okla. Nursing Homes, Ltd., 1993 OK 160, Â¶ 12, 867 P.2d 1241, 1245 (quoting Russell--Locke Super-Service Inc. v. Vaughn, 1935 OK 90, Â¶ 18, 40 P.2d 1090, 1094).

Instruction No. 6.8

Instruction No. 6.8 

Scope of Authority --- Defined

An agent is acting within the scope of [his/her] authority if [he/she] the agent is engaged in the transaction of business that has been assigned to [him/her] by [his/her] the principal, or if [he/she] the agent is doing anything that may reasonably be said to have been contemplated as a part of [his/her] the agent's duties agency. It is not necessary that the principal expressly authorized an agent's act or failure to act must have been expressly authorized by the principal.

Comments

The scope and extent of the agent's authority are to be determined from all of the facts and circumstances in evidence. Williams v. Leforce, 1936 OK 666, Â¶ 0, 177 Okla. 638, 642, 61 P.2d 714, 714 718 (Syllabus by the Court) (1936). The principal is not bound by any act of the agent outside the scope of authority. Continenta'l Supply Co. v. Sinclair Oil & Gas Co., 1924 OK 1166, Â¶ 4, 109 Okla. 178, 181, 235 P. 471, 474 (1925). The Oklahoma Court of Civil Appeals summarized the agent's scope of authority in Elam v. Town of Luther, 1990 OK CIV APP 7, Â¶ 6, 787 P.2d 1294, 1296, as follows: "[A]n agent acts within the scope of his authority, as determined by the facts and circumstances of each case, if engaged in the transaction of business assigned, or if doing that which may reasonably be said to have been contemplated as a part of his duties."

Instruction No. 6.9

Instruction No. 6.9 

Incidental or Implied Authority --- Defined

In addition to the express authority conferred on [him/her] the agent by [his/her] the principal, an agent has the authority to do such acts as that are incidental to, or reasonably necessary to accomplish, the intended result purpose expressly delegated to the agent.

Comments

American Nat'l Bank v. Bartlett, 40 F.2d 21 (10th Cir. 1930); See Ivey v. Wood, 1963 OK 281, Â¶ 16, 387 P.2d 621, 625 ("An agent's authority will be implied, where necessary to carry out the purpose expressly delegated to him."). (Okla. 1963); Elliot v. Mutual Life Ins. Co., 185 Okla. 289, 291, 91 P.2d 746, 747 (1939); R.V. Smith Supply Co. v. Stephens, 169 Okla. 555, 557, 37 P.2d 926, 929 (1934). Citing Ivey v. Wood, supra, the Oklahoma Court of Civil Appeals explained in Elam v. Town of Luther, 1990 OK CIV APP 7, Â¶ 6, 787 P.2d 1294, 1296: "In addition to express authority granted by the principal, an agent has such implied authority to perform such acts as are incidental to, or reasonably necessary to accomplish the intended result." 

Instruction No. 6.11

Instruction No. 6.11

Apparent Authority [Agency by Estoppel] --- Definition and Effect

When a principal by [his/her/its] If either the words or conduct of [Name of Principal] has caused another [Name of Plaintiff] reasonably to believe that the principal [Name of Principal] has had authorized [his/her/its] agent [Name of Agent] to take certain action on the principal's behalf of [Name of Principal], though in fact the principal [Name of Principal] may not have actually done so, such the words or conduct constitute of [Name of Principal] constituted apparent authority, and as to [Name of Plaintiff] the other person are were the same as if the principal [Name of Principal] had authorized such [Name of Agent] to take the action. The apparent authority of [Name of Agent] may not be based solely on the words or conduct of [Name of Agent]. In addition, [Name of Plaintiff] must have changed position to [his/her] detriment in reliance on the apparent authority of [Name of Agent].

Notes on Use

This instruction should not be used when the principal is undisclosed, since by the definition of apparent authority, it cannot exist when the principal is undisclosed. Such may not be true when the principal is partially disclosed, as in the case of a partnership where the third person is dealing with the partnership and knows some of its members but not all of them.

The rule of apparent authority should not be confused with the rules governing implied or incidental authority. See Instructions 6.9 and 6.10.

The trial court should substitute the name of a defendant or another person for [Name of Plaintiff] in this Instruction in appropriate circumstances.

Comments

The Oklahoma Supreme Court set out the requirements for apparent authority in Sparks Brothers Drilling Co. v. Texas Moran Exploration Co., 1991 OK 129, Â¶ 17, 829 P.2d 951, 954, as follows:

"Apparent authority" of an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing. Three elements must exist before a third party can hold a principal liable for the acts of another on an apparent-agency principal: (a) conduct of the principal [which would reasonably lead the third party to believe that the agent was authorized to act on behalf of the principal], (b) reliance thereon by [the] third person, and (c) change of position by the third party to his detriment. (Citations omitted).

See also Weldon v. Seminole Mun. Hosp., 1985 OK 94, Â¶Â¶ 4, 7, 8, 709 P.2d 1058, 1059--1060 (designating the theory as either ostensible agency or agency by estoppel); Ocean Accident & Guar. Corp. v. Denner, 207 Okla. 416, 419, 1952 OK 395, Â¶ 14, 250 P.2d 217, 220--21 (1952) (describing the theory in estoppel terms).

Instruction No. 6.12

Instruction No. 6.12 

SCOPE OF AUTHORITY OR EMPLOYMENT --- DEPARTURE

An [agent/employee] is acting outside the scope of [his/her] [authority/employment] when [he/she] the [agent/employee] substantially departs from [his/her] principal's [or employer's] the [principal's/employer's] business by doing an act intended to accomplish an independent purpose of [his/her] own or for some other purpose which that is unrelated to the business of [his/her] principal [or employer] the [principal/employer] and not reasonably included within the scope of [his/her] the express or implied [authority/employment]. Such The departure may be of for a short duration time, but during such that time the [agent/employee] is not acting within the scope of [his/her] [authority/employment].

Notes on Use

Use The trial court should use this instruction with the instructions defining scope of authority or employment.

Comments

Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Okla. 275, 290, 114 P. 333, 339 (1911); see Independent Torpedo Co. v. Carder, 165 Okla. 87, 88, 25 P.2d 62, 63 (1933); Coon v. Boston Ins. Co., 79 Okla. 296, 296, 192 P. 1092, 1093 (1920). In Baker v. Saint Francis Hospital, 2005 OK 36, Â¶ 17, 126 P.3d 602, 607, the Oklahoma Supreme Court ruled that an employer should not be liable for the actions of an employee if the employee "had stepped aside from her employment at the time of the offending tortious act(s) on some mission or conduct to serve her own personal needs, motivations or purposes."

Instruction No. 6.14

Instruction No. 6.14 

Knowledge of Agent Imputable to Principal

Knowledge, or notice possessed by an agent while acting within the scope of [his/her] the agent's authority, is the knowledge of, or notice to, [his/her] the principal.

Comments

The Oklahoma Supreme Court held in Tiger v. Verdigris Valley Electric Cooperative, 2016 OK 74, Â¶ 16, 410 P.3d 1007, 1012, that "the knowledge or notice possessed by an agent while acting within the scope of authority is the knowledge of, or notice to the principal." In Bailey v. Gulf Insurance Co., 389 F.2d 889, 891 (10th Cir. 1968), the general rule was stated that "knowledge of an agent obtained within the scope of his authority is ordinarily imputed to his principal." Motors Ins. Corp. v. Freeman, 304 P.2d 328, 330 (Okla. 1956).

If the knowledge is acquired by the agent , previous prior to the agency, it will be imputed to his the principal if otherwise imputable. First State Bank of Keota v. Bridges, 1913 OK 553, Â¶ 5, 39 Okla. 355, 359-60, 135 P. 378, 380. A principal is not chargeable with notice received by an agent after termination of the agency. Phillips v. Roper, 1935 OK 329, Â¶ 15, 42 P.2d 871, 874 (1935).

Instruction No. 7.5

Instruction No. 7.5 

Principal and Agent or Employer and Employee --- 

Both Parties Sued --- Liability When Issue as to 

Relationship or Scope of Authority or Employment

If you find that [name of agent or employee] [was the agent/employee of [name of principal or employer]] [and] [was acting within the scope of [his/her] authority/employment] at the time of the occurrence, and if you find [name of agent or employee] is liable, then both are liable. If you find that [name of agent or employee] is not liable, then neither is liable.

If you find [name of agent or employee] is liable, but [was not an agent/employee of [name of principal or employer]] [or] [was not acting within the scope of [his/her] authority as an agent/employee of [name of principal or employer]] at the time of the occurrence, then [name of principal or employer] is not liable.

Notes on Use

Use whichever bracketed clauses are appropriate, depending on whether either or both, the relationship or the scope of authority or employment, has been denied.

When the scope of employment or scope of authority is in dispute, either Instruction 6.7 or 6.8, whichever is appropriate, should be given with this instruction.

While this instruction is primarily for use in tort cases, it may also be used in contract cases when, under the substantive law of agency, both the principal and the agent would be bound by the contract.

This instruction should not be used when there is an independent basis of liability claimed against the principal apart from the agency, as for example, when it is alleged the principal has been personally negligent.

Comments

See Baker v. Saint Francis Hospital, 2005 OK 36, Â¶ 10, 126 P.3d 602, 605 ("To hold an employer responsible for the tort of an employee, the tortious act must be committed in the course of the employment and within the scope of the employee's authority.") In re Brown, 412 F. Supp. 1066, 1071 (W.D. Okla. 1975); Hurt v. Garrison, 192 Okla. 66, 67, 133 P.2d 547, 549 (1942); Jenkins v. Helms, 89 Okla. 77, 78, 213 P. 322, 323-24 (1922)

Instruction No. 7.6 

Instruction No. 7.6 

Joint Venturers --- Imputing Negligence Between

If a joint venture is established, the negligence of one venturer within the general scope of the venture becomes the negligence of all venturers.

Notes on Use

This instruction only applies only when a third person is suing or being sued by a joint venturer. It does not apply when the suit is between the joint venturers themselves.

Comments

Gragg v. James, 452 P.2d 579, 587 (Okla. 1969) See Price v. Howard, 2010 OK 26, Â¶ 21, 236 P.3d 82, 91 ("An employee engaged in the activities of a joint venture is an employee of each of the joint venturers."); Martin v. Chapel, Wilkinson, Riggs & Abney, 1981 OK 134, Â¶ 11, 637 P.2d 81, 85 ("Each member of a joint venture acts for himself as principal and as agent for the other members within the general scope of the enterprise."); 54 O.S. 1991 Â§ 209 2011 Â§ 1-301 (partner is agent of partnership for acts in the ordinary course of the business of the partnership).

Instruction No. 9.51

Instruction No. 9.51 

Willful and Wanton Conduct --Definition

Willful and wanton conduct means a course of action showing an actual or

deliberate intention to injure or, if not intentional, shows an utter indifference to or

conscious disregard for the safety of others The conduct of [Defendant] was willful and wanton if [Defendant] was either aware, or did not care, that there was a substantial and unnecessary risk that the conduct would cause serious injury to others. In order for the conduct to be willful and wanton, it must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person.

Comments

This definition is substantially the same as the definition of "willful and wanton" in Instruction No. 9.17, supra, and of "reckless disregard of another's rights" in Instruction 5.6, supra. The Oklahoma Supreme Court quoted the definition of "willful and wanton" from Instruction No. 9.17 with approval in Parret v. UNICCO Service Co., 2005 OK 54, Â¶ 14, 127 P.3d 572, 576. The Supreme Court held in Graham v. Keuchel, 1993 OK 6, Â¶ 49, 847 P.2d 342, 362, as follows: 

The intent in willful and wanton misconduct is not an intent to cause the injury; it is an intent to do an act--or the failure to do an act--in reckless disregard of the consequences and under such circumstances that a reasonable man would know, or have reason to know, that such conduct would be likely to result in substantial harm to another. (Emphasis in original)

Instruction No. 11.10

Instruction No. 11.10 

Duty to Invitee to Maintain Premises -- Generally

It is the duty of the [owner/occupant] to use ordinary care to keep [his/her/its] premises in a reasonably safe condition for the use of [his/her/its] invitees. It is the duty of the [owner/occupant] either to remove or warn the invitee of any hidden danger on the premises that the [owner/occupant] either actually knows about, or that [he/she/it] should know about in the exercise of reasonable care, or that was created by [him/her/it] [or any of [his/her/its] employees who were acting within the scope of their employment]. This duty extends to all portions of the premises to which an invitee may reasonably be expected to go.

Notes on Use

This instruction should generally be used with Instruction Nos. 11.11 and 11.12, dealing with the definition of a hidden danger and the defense that a danger is open and obvious, and with Instruction Nos. 9.1, 9.2, and 9.6, dealing with negligence and causation.

The trial court is encouraged to modify this generally worded instruction to fit the facts of the particular case. For example, if the case arose out of a slip and fall on a banana peel in a grocery store, the instruction might read:

A grocery store has a duty to keep its floor reasonably safe for its customers. A grocery store has a duty to either remove or warn its customers of any dangerous objects on the floor, such as banana peels, that store employees actually knew about, or should have known about in the exercise of reasonable care, that were put on the floor by a store employee. This duty covers all parts of the store where customers may reasonably be expected to go.

Some cases may involve additional issues, such as whether the invitee went outside the area of his invitation or remained on the premises beyond the time of his invitation, and the general instruction will need to be modified for these cases. In addition, the general instruction may need to be modified for a case where a hidden danger resulted from an intervening action by another person that the defendant should have reasonably anticipated. An example is Lingerfelt v. Winn-Dixie Tex., Inc., 1982 OK 44, 645 P.2d 485, where the Oklahoma Supreme Court held that a grocery store could be found liable to a customer on account of a hidden danger created by other customers that the grocery store should have reasonably anticipated. The Supreme Court reversed a defense verdict and ordered a new trial on account of the denial of a requested jury instruction on a dangerous condition created by the means the grocery store used to display its products. See also Cobb v. Skaggs Cos., Inc., 1982 OK CIV APP 46, Â¶ 12, 661 P.2d 73, 76 ("Merchandising methods that involve unassisted customer selection create problems with dropped or spilled merchandise. The courts have come to recognize that self-service marketing methods necessarily create the dangerous condition.").

In a case where there is a duty for open and obvious dangers under Wood v. Mercedes--Benz of Okla. City, 2014 OK 68, Â¶ 9, 336 P.3d 457, 460, the word "hidden" in the second sentence of the Instruction should be deleted. 

Comments

The following statement of a property owner's duty to invitees is from Williams v. Safeway Stores, Inc., 1973 OK 119, Â¶ 3, 515 P.2d 223, 225:

A storekeeper owes customers the duty to exercise ordinary care to keep aisles and other parts of the premises ordinarily used by customers in transacting business in a reasonably safe condition, and to warn customers of dangerous conditions upon the premises which are known, or which should reasonably be known to the storekeeper, but not to customers. [Citations omitted.]. Knowledge of the dangerous condition will be imputed to the storekeeper if he knew of the dangerous condition, or if it existed for such time it was his duty to know of it, or if the condition was created by him, or by his employees acting within the scope of the employment. [Citations omitted.].

Instruction No. 11.12

Instruction No. 11.12 

Open and Obvious Danger

The [owner/occupant] has no duty to protect invitees [licensees] from or warn them of any dangerous condition that is open and obvious, as such a because an open and obvious danger is ordinarily readily observable by invitees [licensees].

Notes on Use

Even if a dangerous condition is open and obvious, a A property owner may be liable for an injury to an invitee caused by a dangerous condition that the invitee was aware of, if the property owner had reason to know that the dangerous condition would cause harm to the invitee despite the invitee's knowledge, the property owner caused or contributed to the dangerous condition, and the injured party was required to be on the premises. Wood v. Mercedes--Benz of Okla. City, 2014 OK 68, Â¶ 9, 336 P.3d 457, 460. The general instruction above should be modified accordingly not be given where a plaintiff claims the court determines that the property owner had a duty to protect him against a known danger Wood applies.

Comments

This instruction is based on Henryetta Construction Co. v. Harris, 1965 OK 88, Â¶ 7, 408 P.2d 522, 525--26 (Okla. 1965); and Beatty v. Dixon, 1965 OK 169, Â¶ 13, 408 P.2d 339, 343--44 (Okla. 1965). A property owner's responsibility to protect invitees in some circumstances from known dangers is discussed in Restatement (Second) of Torts Â§ 343A comment f (1965) and Restatement (Third) of Torts: Physical and Emotional Harm Â§ 51 comment k. For example, the Oklahoma Supreme Court held in Wood v. Mercedes--Benz of Okla. City, 2014 OK 68, Â¶ 9, 336 P.3d 457, 460, that a property owner had a duty to protect an invitee from hazardous conditions even though the invitee was aware of them because it was foreseeable that the invitee would be harmed. See also Martinez v. Angel Expl., LLC, 798 F.3d 968, 977 (10th Cir. 2016) ("A landowner's duty [under Oklahoma law] to keep the premises in a reasonably safe condition for invitees extends to both latent dangers and at least some obvious dangers with foreseeable harms to a class of visitors required to be on the premises."); Jack Healey Linen Serv. Co. v. Travis, 1967 OK 213, Â¶ 9, 434 P.2d 924, 927 (Okla. 1967) ("Plaintiff's familiarity with the general physical condition which may be responsible for her injury does not of itself operate to transform the offending defect into an apparent and obvious hazard.").

CHAPTER TWENTY

EMOTIONAL DISTRESS

List of Contents

Instruction No. 20.1 Elements of Liability -- Intentional Infliction
of Emotional Distress

Instruction No. 20.1A Elements of Liability -- Negligent Infliction
of Emotional Distress

Â 

Instruction No. 20.1

ELEMENTS OF LIABILITY -- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

For [Plaintiff] to recover from [Defendant] on [his/her] claim for intentional infliction of emotional distress, [he/she] must prove by the greater weight of the evidence that:

1. [Defendant's] actions in the setting in which they occurred were so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society; and

2. [Defendant] intentionally or recklessly caused severe emotional distress to [Plaintiff] beyond that which a reasonable person could be expected to endure.

Notes on Use

The court should also give Instructions 20.2 through 20.4, and ordinarily also an Instruction (No. 5.5) on punitive damages.

The Oklahoma Supreme Court decided in Kraszewski v. Baptist Ctr., 1996 OK 141, 916 P.2d 241, that a claim for intentional infliction of emotional distress could arise from a plaintiff's witnessing an accident, if 1) the plaintiff was directly physically involved in the accident, 2) the plaintiff was damaged from viewing the injury, rather than from learning of it later, and 3) the plaintiff had a familial or other close relationship with the person whose injury gave rise to the plaintiff's mental anguish. 1996 OK 141, Â¶ 18, 916 P.2d at 250. If any of these matters are in controversy and need to be presented to the jury, the trial judge should draft an appropriate instruction. 

Comments

The Oklahoma Supreme Court first recognized the tort of intentional infliction of emotional distress in Breeden v. League Servs. Corp., 1978 OK 27, Â¶ 7, 575 P.2d 1374, 1376. In the Breeden case, the Supreme Court adopted the standards in Restatement (Second) of Torts Â§ 46 (1965), and these are incorporated into this instruction. A previous version of Instruction No. 20.1, which required only that the defendant's actions were unreasonable, was held to be incorrect in Floyd v. Dodson, 1984 OK CIV APP 57, Â¶Â¶ 8-12, 692 P.2d 77, 79-80.

_Instruction No. 20.1A

ELEMENTS OF LIABILITY -- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

For [Plaintiff] to recover from [Defendant] on [his/her] claim for negligent infliction of emotional distress from witnessing an accident, [he/she] must prove by the greater weight of the evidence that:

1. [Defendant] was liable for an injury to [Third Party];

2. [Plaintiff] was directly physically involved in the accident; 

3. [Plaintiff] was injured from actually viewing the injury to [Third Party], rather than from learning of it later, and 

4. [Plaintiff] had a [familial]/[close personal relationship] with [Third Party]. 

Comments

This Instruction is based on Ridings v. Maze, 2018 OK 18, Â¶Â¶ 6--7, 414 P.3d 835, 837--838, and Kraszewski v. Baptist Medical Center of Oklahoma, Inc., 1996 OK 141, Â¶ 18, 916 P.2d 241, 250. While the Oklahoma Supreme Court identified the cause of action as intentional infliction of emotional distress in Kraszewski, the Supreme Court in Ridings characterized it as in effect the tort of negligence, rather than an independent tort. 2018 OK 18, Â¶ 6, 414 P.3d at 837.

CHAPTER TWENTY FOUR

INTERFERENCE WITH CONTRACT

List of Contents

Instruction No. 24.1 Interference with Contract -- Elements

Instruction No. 24.2 Intent --- Definition Interference with Prospective Economic Advantage -- Elements

Instruction No. 24.3 Interference with Contract -- Damages Improper or Unfair Means

Instruction No. 24.4 Intent -- Definition 

Instruction No. 24.5 Interference with Contract -- Damages 

Â 

Instruction No. 24.1

Instruction No. 24.1 

Interference with Contract --- Elements

[Plaintiff] claims that [he/she/it] had a contract with [Third Party] in which they had agreed to [Describe the terms of the contract]. [Plaintiff] also claims that [Defendant] intentionally and wrongfully interfered with this contract, and that [he/she/it] suffered damages as a direct result. In order to win on the claim of intentional interference with a contract, [Plaintiff] must show by the weight of the evidence that:

1. [Plaintiff] had a contract with [Third Party];

2. [Defendant] knew [or under the circumstances reasonably should have known] about the contract;

3. [Defendant] interfered with the contract [or induced the Third Party to breach the contract, or made it impossible for the contract to be performed];

4. [Defendant]'s actions were conduct was intentional;

5. [Defendant] used improper or unfair means; and

6. [Plaintiff] suffered damages as a direct result of [Defendant]'s actions.

Notes on Use

This Instruction should be used with the following Instructions in a case where a plaintiff seeks recovery for intentional interference with a contract. It may be adapted for a claim for interference with a business relationship by substituting "business relationship" for "contract" throughout. See Waggoner v. Town & Country Mobile Homes, Inc., 808 P.2d 649, 654 (Okla. 1990). For a definition of intent, see Instruction No. 24.4, infra. For an enumeration of factors to consider for improper or unfair means, see Instruction 24.3, infra. Instruction No. 24.2, infra, should be used where a plaintiff seeks recovery for intentional interference with a prospective business relationship that has not been reduced to a contract.

Comments

The Oklahoma Supreme Court set out the elements of a claim for malicious interference with contract or business relations in Mac Adjustment, Inc. v. Property Loss Research Bureau, 1979 OK 41, Â¶ 5, 595 P.2d 427, 428 (Okla. 1979), as follows:

In order to recover in [an action for malicious interference with contract or business relations], a plaintiff must show:

1. That he or she had a business or contractual right that was interfered with.

2. That the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable.

3. That damage was proximately sustained as a result of the complained-of interference.

See also Del State Bank v. Salmon, 1976 OK 42, n.1, 548 P.2d 1024, 1026 n.1 (Okla. 1976) (setting out instructions that had been approved by both parties in a case involving on intentional interference with an employment contract that both parties had approved). For a reference to the related tort of interference with a prospective business advantage, see Overbeck v. Quaker Life Ins. Co., 757 P.2d 846, 847-48 (Okla. Ct. App. 1984).

The Restatement (Second) of Torts 2d recognizes two types of interference with contractual relations. Section 766 involves interference with the performance of contract by causing a party to the contract other than the plaintiff not to perform. Section 766A involves interference of a contract by preventing the plaintiff's own performance of the contract or by making the plaintiff's performance more expensive or burdensome. No Oklahoma court has ruled on the viability of a claim under Â§ 766A, however, the Tenth Circuit has held that a claim under Â§ 766A is viable in Oklahoma. John A. Henry & Co., Ltd. v. T.G. & Y. Stores Co., 941 F.2d 1068 (10th Cir. 1991). Other jurisdictions have rejected claims under Â§ 766A. See, e.g., Price v. Sorrell, 784 P.2d 614 (Wyo. 1989). Both types of interference with contract are recognized in Oklahoma. Wilspec Techs., Inc. v. DunAn Holding Grp. Co., 2009 OK 12, Â¶ 11, 204 P.3d 69, 73. A claim for interference with a contract requires interference with a contract between the plaintiff and a third party, as opposed to breach of a contract between the plaintiff and the defendant. Voiles v. Santa Fe Minerals, Inc., 1996 OK 13, Â¶ 18, 911 P.2d 1205, 1209; Navistar Int'l Transp. Corp. v. Vernon Klein Truck & Equip., 1994 OK CIV APP 168, Â¶ 6, 919 P.2d 443, 446.

A Subcommittee on Jury Instructions of the Business Torts Litigation Committee of the Section of Litigation of the American Bar Association has prepared an extensive set of Model Jury Instructions for Business Tort Litigation. The trial court may consider adapting the following Instruction 1.05[2] for use in a case where there is an issue concerning whether the defendant's interference with contract was improper:

The determination of whether the defendant's conduct was or was not improper depends upon your consideration of all the facts and circumstances of the case, and a balancing of the following factors:

1. The nature of the defendant's conduct;

2. The defendant's motive;

3. The interests of the plaintiff with which the defendant's conduct interfered;

4. The interests sought to be advanced by the defendant;

5. The social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;

6. The proximity or remoteness of the defendant's conduct to the interference claimed by the plaintiff; and

7. The relationship among the plaintiff, _______ [name of breaching party], and the defendant.

Instruction No. 24.2

Intent -- Definition

Interference with Prospective Economic Advantage --- Elements

[Defendant]'s actions were intentional if [he/she/it] either desired to interfere with [Plaintiff]'s contract with [Third Party], or [he/she/it] was substantially certain that his actions would interfere with the contract.

[Plaintiff] claims that [he/she/it] had a [prospective] business relationship with [Third Party]. [Plaintiff] also claims that [Defendant] intentionally and wrongfully interfered with this [prospective] business relationship, and that [he/she/it] suffered damages as a direct result. In order to win on the claim of intentional interference with a [prospective] business relationship, [Plaintiff] must show by the weight of the evidence that:

1. [Plaintiff] had a [prospective] business relationship with [Third Party];

2. [Defendant] knew [or under the circumstances reasonably should have known] about the [prospective] business relationship;

3. [Defendant] interfered with the [prospective] business relationship by:

causing [Third Party] not to [enter into]/[continue] the [prospective] business relationship;

OR

preventing [Plaintiff] from [entering into]/[continuing]

the [prospective] business relationship.

4. [Defendant]'s conduct was intentional;

5. [Defendant] used improper or unfair means; and

6. [Plaintiff] suffered damages as a direct result of [Defendant]'s actions.

Notes on Use

This Instruction should be used in a case where a plaintiff seeks recovery for intentional interference with a business relationship or prospective business relationship that has not been reduced to a contract. For an enumeration of factors to consider for improper or unfair means, see Instruction No. 24.3, infra. For a definition of intent, see Instruction No. 24.4, infra.

Comments

The Oklahoma Supreme Court stated in Del State Bank v. Salmon, 548 P.2d 1024, 1026 (Okla. 1976): "Intentional interference may be malice in the law without personal hatred, ill will, or spite." Oklahoma courts have recognized claims for intentional interference with a prospective contractual relation under Restatement (Second) of Torts Â§ 766B. Wilspec Techs., Inc. v. DunAn Holding Grp. Co., 2009 OK 12, Â¶ 7, 204 P.3d 69, 71. Section 766B provides:

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

Instruction No. 24.3

Instruction No. 24.3 

Interference with Contract --- Damages Improper or Unfair Means

If you decide for [Plaintiff], you must then fix the amount of [his/her/its] damages. This is the amount of money that will reasonably and fairly compensate [him/her/its] for the losses [he/she/it] has sustained from the breach of the contract.

Whether the defendant's conduct was improper or unfair depends upon your consideration of all the facts and circumstances of the case, and a balancing of the following factors:

1. The nature of the defendant's conduct;

2. The defendant's motive;

3. The interests of the plaintiff with which the defendant's conduct interfered;

4. The interests sought to be advanced by the defendant;

5. The social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;

6. The proximity or remoteness of the defendant's conduct to the interference claimed by the plaintiff; and

7. The relationship among the plaintiff, _______ [name of breaching party], and the defendant.

Notes on Use Comments

In appropriate cases the court should also give Instruction No. 5.5 for punitive damages. This Instruction is based on language that the Oklahoma Supreme Court quoted with approval in Wilspec Technologies, Inc. v. DunAn Holding Group Co., 2009 OK 12, n.6, 204 P.3d 69, 74 n.6. 

Instruction No. 24.4

Instruction No. 24.4

Intent --- Definition

[Defendant]'s actions were intentional if [he/she/it] either desired to interfere with [Plaintiff]'s contract with [Third Party], or [he/she/it] was substantially certain that [his/her/its] actions would interfere with the contract.

Comments

The Oklahoma Supreme Court stated in Del State Bank v. Salmon, 1976 OK 42, Â¶ 9, 548 P.2d 1024, 1026 (Okla. 1976): "Intentional interference may be malice in the law without personal hatred, ill will, or spite."

Instruction No. 24.5

Instruction No. 24.5

INTERFERENCE WITH CONTRACT --- DAMAGES

If you decide for [Plaintiff], you must then fix the amount of [his/her/its] damages. This is the amount of money that will reasonably and fairly compensate [him/her/it] for the losses [he/she/it] has sustained from the breach of the contract.

Notes on Use

In appropriate cases the court should also give Instruction No. 5.5 for punitive damages.

Instruction No. 25.2

Instruction No. 25.2

CONDEMNATION --- JUST COMPENSATION --- FULL TAKING

The term "just compensation" means the payment to [Owner] for the taking of [his/her/its] property by [Condemnor] of an amount of money that will make [Owner] whole. In this case this is the fair market value of the property on __________, the date of the taking, [plus reasonable and necessary moving expenses]. The property includes the land and any buildings or other things that are attached to the land.

Notes on Use

This Instruction should be used only when all of a particular property is condemned so that there are no problems involving the effect of the taking on the valuation of any remaining property. It should be given along with Instruction No. 25.5, "Fair Market Value-Definition," and other appropriate Instructions. The bracketed language in the second sentence that refers to moving expenses should be included if the plaintiff is seeking moving expenses. See State ex rel. Dep't. of Transp. v. Little, 2004 OK 74, Â¶Â¶ 18, 25, 100 P.3d 707, 717, 720.

Comments

The 1990 amendment to Okla. Const. Art. 2, Â§ 24 provides in pertinent part: "Just compensation shall mean the value of the property taken . . . ." Oklahoma cases decided prior to this amendment used fair market value as the standard for just compensation. E.g., Grand Hydro v. Grand River Dam Auth., 1943 OK 158, Â¶ 8, 139 P.2d 798, 800, 192 Okla. 693, 694 ("The measure of compensation in [a condemnation proceeding] is the fair market or cash value of the land condemned.").

CHAPTER THIRTY THREE

NUISANCE

List of Contents

Instruction No. 33.1 Nuisance -- Introduction

Instruction No. 33.2 Nuisance -- Elements

Instruction No. 33.3 Nuisance -- Public Nuisance

Â 

Instruction No. 33.1

Nuisance --- Introduction

This is an action to recover damages for a nuisance. [Plaintiff] claims that [Defendant] caused a nuisance by [specify the actions or failure to act that the plaintiff alleges constituted a nuisance].

Instruction No. 33.2

Nuisance --- Elements

To find for [Plaintiff] on the claim for a nuisance, [Plaintiff] must prove by the greater weight of the evidence:

1. That [Defendant] has [done any unlawful action]/[failed to perform a duty] that: [Select applicable alternative]:

[Annoyed]/[Injured]/[Endangered] the [comfort]/[repose]/[health]/[safety] of others;

OR

Offended decency;

OR

Unlawfully [interfered with]/[obstructed]/[tended to obstruct]/[made dangerous for passage] any [lake]/[navigable river/stream/canal/basin]/[public park/square/street/highway];

OR

Made another person insecure in [life]/[the use of property];

AND

2. The nuisance caused damages to [Plaintiff].

Comments

This Instruction is based on 50 O.S. 2011 Â§ 1. Agricultural activities do not constitute a nuisance unless they have a substantial adverse effect on the public health and safety. Id. Â§ 1.1(B). An action for nuisance may not be brought against an agricultural activity that has lawfully been operating for more than two years. Id. Â§ 1.1(C).

Instruction No. 33.3

Nuisance -- Public Nuisance

A public nuisance is a nuisance that affects at the same time [an entire community/neighborhood]/[large number of persons], even though the amount of the [annoyance/damage] may be different for different people. In order to bring an action for a public nuisance, [Plaintiff] must show by the greater weight of the evidence that [Plaintiff] has suffered a specific injury on account of the nuisance.

Notes on Use

This Instruction should be used if the plaintiff is seeking damages for a public nuisance.

Comments

This Instruction is based on the Oklahoma Supreme Court's interpretation of 50 O.S. Â§ 10 in Smicklas v. Spitz, 1992 OK 145, Â¶ 8 & n.16, 846 P.2d 362, 366--67 & 367 n.16.

Â 

Â